Charles Edward PRICE, Appellant,

v.

The STATE of Texas, State.

No. 2–00–253–CR.

Court of Appeals of Texas,
Fort Worth.

Sept. 20, 2001.

Rehearing Overruled Oct. 25, 2001.

Dryburgh Moraine Borah Crosbie & Scofield, and J.T. Borah, Denton, Texas, Attorney for Appellant.

Bruce Isaacks, Criminal District Attorney, Catherine Luft, Matthew J. Shovlin, and Brian Tackett, Assistant District Attorneys, Denton, Texas, Attorney for Appellee.

PANEL F: CAYCE, C.J.; DAY and WALKER, JJ.

## OPINION

CAYCE, Chief Justice.

A jury convicted Charles Edward Price of the offense of driving while intoxicated, and the trial court assessed a punishment of 120 days' confinement in the Denton County Jail and a $400 fine. Appellant challenges the conviction in four points, alleging that (1) the trial court erred in admitting the results of his breath test because it was not administered voluntarily and erred in refusing to charge the jury on the voluntariness of the test; (2) the State failed to provide a retrograde extrapolation to relate the breath test back to the time he was driving; (3) the trial court erred in submitting a general verdict; and (4) there is no evidence that he was intoxicated. We will affirm.

On November 28, 1999, around 12:30 a.m., Marc Hodges, an officer with the Denton Police Department, observed appellant's car strike a guardrail and then continue driving. Officer Hodges stopped the vehicle and requested appellant's driver's license and proof of insurance. Appellant had neither. Officer Hodges noticed that appellant's eyes were very red and glassy, he had a strong odor of an alcoholic beverage on his breath, and he was unsteady on his feet. When appellant got out of his vehicle, Officer Hodges observed him stagger, and he "held on to the car" as he walked toward the rear of the vehicle.

Officer Hodges administered four field sobriety tests. Appellant failed the horizontal gaze nystagmus test, the vertical nystagmus test, the walk-and-turn test, and the one-legged stand test. Officer Hodges believed that appellant was intoxicated and placed him under arrest. At the station house, Officer Hodges and another officer made an intoxilyzer videotape of appellant, read him his statutory warnings, and administered the intoxilyzer test twice. Appellant tested above the legal limit both times, with results of 0.182 and 0.166.

■ In his first point, appellant complains that the trial court erred in admitting the intoxilyzer test results because he did not freely and voluntarily submit to the test. He also contends that the trial court erred by denying his requested jury charge on voluntariness.

■ A suspect's consent to a breath test must be "voluntary." *Turpin v. State,* 606 S.W.2d 907, 914 (Tex.Crim.App.1980); *see also* TEX. TRANSP. CODE ANN. § 724.013 (Vernon 1999) (noting that if person under arrest for DWI refuses to submit to breath test, then none shall be taken). To be voluntary, a suspect's decision to submit to the breath test must not be the result of physical or psychological pressures brought to bear by law enforcement officials. *Erdman v. State,* 861 S.W.2d 890, 893 (Tex.Crim.App.1993).

During the following exchange, Officer Hodges requested and appellant agreed to submit to the intoxilyzer test:

[Officer Hodges:] Mr. Price, I'm now requesting a specimen of your breath. Are you willing to give us—

[Appellant:] Oh, whatever.

[Officer Hodges:] Are you willing to give a specimen, sir?

[Appellant:] Oh, why don't you go ahead and put me in my tank, man, 'cause that's what you're going to do anyway.

[Officer Hodges:] Mr. Price, I'm going to ask you one more time, and if you don't answer that time, I'm going to take it as a refusal; okay? Now, Mr. Price, I'm requesting a specimen—

[Appellant:] Yeah, right, give me your low—blow-up doll or whatever you got man, yeah.

[Officer Hodges:] Okay. Then you agree—

[Appellant:] Damn. Gotta be—gotta be kidding me.

In the hearing on his motion to suppress, appellant testified that after the officer turned off the video camera, appellant pushed away the intoxilyzer machine with his hand. After the officer told him that "it was something that they had to do," appellant said "to just go ahead and get it over with" because the officers "kept bugging me about it."

Based on this evidence, we conclude that the evidence conclusively establishes that appellant freely and voluntarily consented to taking the intoxilyzer test. There is no evidence in the record to the contrary. Because the uncontroverted evidence shows that appellant voluntarily agreed to provide a breath specimen, the trial court did not err in admitting the results of the breath test or in denying appellant's requested jury charge on voluntariness. *See Thomas v. State,* 723 S.W.2d 696, 707 (Tex. Crim.App.1986). We overrule point one.

■■■ In his second point, appellant complains that the trial court erred in admitting the results of the breath test because the State failed to provide a retrograde extrapolation[1] to relate the breath test back to the time of appellant's alleged driving under the influence of alcohol. Retrograde extrapolation is not required

to admit intoxilyzer test results, however, if other evidence proves beyond a reasonable doubt that a person was intoxicated when the offense occurred. *See Forte v. State,* 707 S.W.2d 89, 94–95 (Tex.Crim. App.1986) (holding that defendant committed DWI offense without consideration of extrapolation evidence); *O'Neal v. State,* 999 S.W.2d 826, 832 (Tex.App.—Tyler 1999, no pet.) (determining that extrapolation not required to find defendant guilty of intoxication per se).

■■■ Here, the State offered sufficient evidence to convict appellant of DWI without the retrograde extrapolation. Officer Hodges testified that appellant did not stop his car after striking the guardrail, and when he pulled appellant over, appellant's eyes were glassy and red, his breath smelled of an alcoholic beverage, he was unsteady on his feet, and he failed all four field sobriety tests that the officer administered. This evidence is sufficient to support the jury's finding that appellant was intoxicated at the time he was driving. We overrule point two.

■■■ In his third point, appellant contends that the trial court erred in denying his request for a special verdict. Relying on *State v. Carter,* 810 S.W.2d 197 (Tex. Crim.App.1991), appellant maintains that there were two separate and distinct DWI offenses charged in this case: (1) intoxication per se and (2) intoxication by reason of impairment. According to appellant, it is possible that with the general verdict the jury may have been split on the decision of whether he was intoxicated per se or by reason of impairment and, therefore, the jury's decision would not have been unanimous. Appellant contends this violates his rights to due process and due

---

1. Retrograde extrapolation is the computation back in time of the blood-alcohol level that estimates the blood-alcohol level at the time

of driving based on a test result from some later time. *Mata v. State,* 46 S.W.3d 902, 908–09 (Tex.Crim.App.2001).

course of law under both the federal and state constitutions.

The jury charge clearly did authorize conviction under alternative definitions of intoxication—impairment of faculties and alcohol concentration:

Now therefore, if you find from the evidence beyond a reasonable doubt that on or about the 28th day of November, 1999, the defendant, Charles Edward Price, did then and there drive or operate a motor vehicle in a public place located in Denton County, Texas, while intoxicated, to wit: said defendant did not have the normal use of mental or physical faculties by reason of the introduction of alcohol into the body, or that the defendant had an alcohol concentration of 0.08 or more, you will find the defendant guilty as charged in the information.

We must determine whether this charge improperly combines two discrete offenses in such a way as to allow conviction by a nonunanimous jury, as appellant contends, or whether the alternative descriptions of intoxication merely constitute "manner and means" allegations that may be properly combined in a jury charge. The question is one of first impression in this court.

■■■ The charge is clearly proper if we interpret the statutory definition of intoxication as providing alternative "means" of proving that a defendant was intoxicated. The State is allowed to plead all alternative theories of the offense that the evidence may ultimately prove; that is, it is allowed to anticipate variances in the proof by pleading alternative "manners and means" when proof of any one theory of the offense will support a guilty verdict. *Lawton v. State,* 913 S.W.2d 542, 551 (Tex. Crim.App.1995), *cert. denied,* 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996). A conviction may lawfully be had through proof of only one of the alternative means

alleged for committing the offense. *See Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Crim.App.1991), *cert. denied,* 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992); *Rogers v. State,* 774 S.W.2d 247, 251 (Tex.Crim.App.), *cert. denied,* 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989). Furthermore, where alternative theories of committing the same offense are submitted to the jury disjunctively, it is proper for the jury to return a general verdict if there is sufficient evidence to support a conviction under any of the theories alleged. *Aguirre v. State,* 732 S.W.2d 320, 326 (Tex.Crim.App.1987) (op. on reh'g); *Watkins v. State,* 946 S.W.2d 594, 601 (Tex.App.—Fort Worth 1997, pet. ref'd). This is true because neither the federal nor state constitution requires the jury to reach a unanimous agreement on preliminary factual issues or alternative factual theories offered by the State to support a conviction. *See Kitchens,* 823 S.W.2d at 258; *Gray v. State,* 980 S.W.2d 772, 775 (Tex.App.—Fort Worth 1998, no pet.).

Appellant seeks to distinguish his case from "manner and means" precedent by arguing that *Carter* conclusively established separate offenses: intoxication-by-impairment DWI and intoxication-per-se DWI. In *Carter,* the court of criminal appeals held, "in the face of a timely motion to quash, a charging instrument alleging driving while intoxicated must allege (1) which definition(s) of 'intoxicated' the State will rely on at trial and (2) which type(s) of intoxicant the defendant supposedly used." *Carter,* 810 S.W.2d at 200 (citations omitted). In arriving at this holding the court reasoned that, under what was then article 6701*l*–1, "there are really two types of DWI offenses." *Id.; see also* Act of May 17, 1985, 69th Leg., R.S., ch. 462, § 18, 1985 Tex. Gen. Laws 1624, 1630, *repealed by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.15, 1993 Tex. Gen. Laws 3586,

3704 (current version at TEX. PENAL CODE ANN. § 49.01(2) (Vernon Supp.2001)). The court then referred to the "loss of faculties" offense and the "per se offense." *Carter*, 810 S.W.2d at 200. Finally, the court referred to the "different behaviors necessary to commit the two offenses." *Id.*

The issue in *Carter*, however, was whether the indictment gave sufficient notice of the charged DWI offense in light of the various statutorily-defined manners of intoxication, not whether a general jury charge form can be used in a DWI case. *Id.* at 198. The court pointed out that, "consistent with these [constitutional notice] principles, the State may specifically allege, in the conjunctive or disjunctive, *any* or *all* of the statutorily-defined types of conduct regarding an offense." *Id.* at 199. Further, *Carter* cited cases concerning what the State must allege when a statute contains a definition that provides "for more than one *manner or means* " of committing the charged offense. *Id.* at 199–200 (emphasis supplied). None of these cases treats the alternative definitions of "intoxicated" as creating separate and distinct offenses. *See State v. Winskey*, 790 S.W.2d 641, 642 (Tex.Crim.App. 1990); *Solis v. State*, 787 S.W.2d 388, 390–91 (Tex.Crim.App.1990); *Garcia v. State*, 747 S.W.2d 379, 380–81 (Tex.Crim.App. 1988); *Ferguson v. State*, 622 S.W.2d 846, 851 (Tex.Crim.App.1981) (op. on reh'g).

Other courts of appeals have declined to read *Carter* as holding that the definition of intoxicated in the DWI statute sets forth separate offenses. In *Harris v. State*, the San Antonio Court of Appeals rejected a defendant's claim that, under *Carter*, the State's amendment of a DWI complaint to include an intoxication-per-se allegation constituted charging him with a different or additional offense. 866 S.W.2d 316, 324 (Tex.App.—San Antonio 1993, pet.

ref'd). The court observed, "Despite some of the language in *Carter*, the 'amendment' here simply dealt with different means or modes of committing the same offense–driving while intoxicated. We do not interpret *Carter* to hold otherwise." *Id.*

The Dallas Court of Appeals followed *Harris* in rejecting a defendant's complaint that the State had impermissibly charged two offenses in the same paragraph when it alleged both loss of mental and physical faculties and an alcohol concentration of at least 0.10. *Kilgo v. State*, 880 S.W.2d 828, 829 (Tex.App.—Dallas 1994, pet. ref'd). Most recently, in *Ex parte Crenshaw*, the Houston First Court of Appeals, after examining *Carter*, concluded, "The definition of 'intoxicated' in the DWI statute sets forth alternate means of committing one offense. It does not set forth separate and distinct offenses." 25 S.W.3d 761, 766 (Tex.App.—Houston [1st Dist.] 2000, pet. ref'd).

Other post-*Carter* courts, without reference to that opinion, have also held that the definition of intoxication merely provides alternative means of proving the underlying offense—DWI. *See Murphy v. State*, 44 S.W.3d 656, 660 (Tex.App.—Austin 2001, no pet.) ("The statutory definition of 'intoxicated' provides two means or modes of committing the same offense."); *Williams v. State*, 946 S.W.2d 886, 901 (Tex.App.—Waco 1997, no pet.) ("Article 6701l–1(a)(2) provided two different means by which the State could prove the accused was intoxicated . . . ."). *But see Reidweg v. State*, 981 S.W.2d 399, 404 (Tex.App.—San Antonio 1998, pet. denied) (op. on reh'g) ("The failure of a trial court to submit separate instruction and verdict forms on the two theories of intoxication has been held to be error because it allows a defendant to be convicted by a non-unanimous verdict.") (citing *Ray v. State*, 749 S.W.2d 939, 944 (Tex.App.—San Antonio 1988, pet.

ref'd) and *Davis v. State,* 949 S.W.2d 28, 29–30 (Tex.App.—San Antonio 1997, no pet.)).

We agree with those courts that have declined to read *Carter* as expansively as appellant recommends. Again, *Carter* dealt with a constitutional question of notice, not with how the jury hearing a DWI case should be charged. 810 S.W.2d at 198. *Carter* referred to "types of DWI offenses" and "separate" offenses, but did so in the context of a discussion of the specificity of notice required to allow one accused of DWI to prepare a defense without resorting to guessing or assuming the State's plans to prove one or all of the types of statutorily-defined conduct. *Id.* at 199–201. Nothing in *Carter* suggests that its applicability extends beyond constitutional notice law. *Id.*

█ Shortly after *Carter,* this court held, "The statutory definition of intoxication provides two means of proving that a defendant is intoxicated, but only one act is proscribed: driving while intoxicated." *State v. Lyons,* 820 S.W.2d 46, 48 (Tex. App.—Fort Worth 1991, no pet.). Neither our reading of *Carter* nor any subsequent case law offers grounds for altering *Lyons'* interpretation of the DWI statutory scheme. Because we hold that the definition of "intoxicated" in the DWI statute sets forth alternative means of committing one offense and does not set forth separate and distinct offenses, a special verdict form is not required when a defendant is charged with DWI under multiple theories of intoxication. *See Aguirre,* 732 S.W.2d at 326; *Watkins,* 946 S.W.2d at 601.

Because the jury was not required to reach a unanimous agreement on alternative factual theories of intoxication offered by the State to support a conviction, the trial court did not err in denying appellant's request for a special verdict form. *See Kitchens,* 823 S.W.2d at 258; *Gray,*

980 S.W.2d at 775. Even assuming, however, that the trial court should have submitted the DWI theories in separate jury questions, the evidence discussed under point four is sufficient to support the jury's verdict under both theories. Consequently, the trial court's denial of appellant's request for a special verdict, if erroneous, would not constitute reversible error. *See Reidweg,* 981 S.W.2d at 404–05; *Chauncey v. State,* 837 S.W.2d 179, 182 (Tex.App.— El Paso 1992), *aff'd,* 877 S.W.2d 305 (Tex. Crim.App.1994). We overrule point three.

█ In his fourth point, appellant asserts that there is no evidence that he was intoxicated. The evidence in this case shows that appellant hit the guardrail with his car, had red and glassy eyes, had the strong odor of an alcoholic beverage on his breath, was unsteady on his feet, failed all four of the field sobriety tests, and tested above the legal limit on the breath test. Viewing the evidence in the light most favorable to the verdict, we conclude that there is legally sufficient evidence in the record to support appellant's conviction. *Cardenas v. State,* 30 S.W.3d 384, 389–90 (Tex.Crim.App.2000). We overrule point four.

Having overruled each of appellant's points, we affirm the trial court's judgment.