COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-217-CR
 
 
BRIAN 
RICHARD SAFCSAK                                                     APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 396TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        Brian 
Richard Safcsak appeals from his conviction for the murder of Barbara Gilreath. 
In six points, he complains that: the trial court erred by receiving a vague and 
uncertain jury verdict that conflicted with jury instructions and the 
indictment; the trial court erred by not providing verdict forms for each 
charging instruction; the evidence was legally and factually insufficient to 
sustain the verdict and judgment of murder under the evidentiary rule of corpus 
delicti, the evidence was legally and factually insufficient to sustain the 
verdict and judgment of murder because the evidence regarding the cause of death 
is insufficient to support the allegations in the indictment; and the trial 
court erred by denying appellant’s motion for a directed verdict as to count 
one.  We affirm.
Facts
        On 
June 17, 2000, witnesses saw appellant’s girlfriend, Barbara Gilreath putting 
boxes and a vacuum cleaner outside the duplex where she lived with 
appellant.  Sometime later, a neighbor heard fighting in appellant’s part 
of the duplex.  After it was quiet, the neighbor saw appellant outside 
bringing the boxes and vacuum back inside, however, no one saw Barbara at the 
duplex again.  Appellant contends that Barbara left in a dark car or truck, 
but witnesses testified that she would not have left without her personal items 
and her dog.  Appellant gave Barbara’s dog and some of her personal items 
to a friend and pawned her other belongings at a pawn shop on June 18, 2000.
        Barbara’s 
mummified remains were found across the highway from appellant’s duplex on or 
around July 25, 2000.  At trial, the State presented evidence that 
appellant had confessed to Barbara’s murder to his cell mate.  The 
medical examiner testified that he discovered multiple fractures all over the 
her skeleton, and evidence of blunt force trauma indicating that she had been 
beaten at or near the time of death.  The jury found appellant guilty of 
her murder and the trial court sentenced him to sixty years’ confinement.
Sufficiency of the Evidence
        In 
his third, fourth, and fifth points, appellant contends that the evidence was 
legally and factually insufficient to support the verdict.  Specifically, 
appellant argues in his third point that the State failed to prove corpus 
delicti, or in other words, that the death of the victim was caused by the 
criminal act of appellant.  In points four and five, appellant complains 
that the State failed to present sufficient evidence of the cause of death as 
alleged in the indictment.
Corpus Delicti
        An 
extrajudicial confession by the accused is insufficient to support conviction 
unless corroborated.  Gribble v. State, 808 S.W.2d 65, 70 (Tex. 
Crim. App. 1990).  Corpus delicti is a rule of evidentiary sufficiency that 
can be summarized as follows: “an extrajudicial confession of wrongdoing, 
standing alone, is not enough to support a conviction; there must exist other 
evidence showing that a crime has in fact been committed.”  Rocha v. 
State, 16 S.W.3d 1, 4 (Tex. Crim. App. 2000); Williams v. State, 958 
S.W.2d 186, 190 (Tex. Crim. App. 1997).  This other evidence alone need not 
be sufficient to prove the offense, “all that is required is that there be 
some evidence which renders the commission of the offense more probable than it 
would be without the evidence.”  Williams, 958 S.W.2d at 190 
(quoting Chambers v. State, 866 S.W.2d 9, 15-16 (Tex. Crim. App. 1993), cert. 
denied, 511 U.S. 1100 (1994)).  The corpus delicti rule is satisfied if 
“some evidence exists outside of the extra-judicial confession which, 
considered alone or in connection with the confession, shows that the crime 
actually occurred.”  Salazar v. State, 86 S.W.3d 640, 645 (Tex. 
Crim. App. 2002).  The identity of the perpetrator, however, is not a part 
of the corpus delicti and may be established by an extra-judicial confession 
alone.  Gribble, 808 S.W.2d at 70.
        Here, 
appellant argues that the State did not meet the requirements of corpus delicti 
because it failed to prove that the victim’s death was caused by the criminal 
act of appellant.  We disagree. The State presented ample evidence to show 
that the victim’s death was caused by appellant’s criminal act.
        First, 
the State presented evidence of appellant’s extra-judicial confession to the 
murder of Barbara.  While in the Tarrant County Jail awaiting trial, 
appellant became friendly with his cell mate Christopher McAlister.  At 
trial, McAlister testified that appellant confessed to him and said, “he had 
already beat the charge [murder] once and that he wasn’t concerned about it, 
that he would beat it again.”  Also, one day appellant became emotional 
and looked as though he were about to cry. McAlister asked him if something was 
bothering him and, appellant responded saying that the night of Barbara’s 
disappearance she and appellant had argued because she wanted to leave 
him.  Appellant told McAlister that he had gotten mad at her and started 
beating on her. McAlister testified that appellant told him that “he beat the 
bitch until she died.”  Appellant further told McAlister that he took 
Barbara’s body across the highway and put it in a field.  Appellant took 
off Barbara’s clothes so that the police would think that appellant’s 
neighbor, a convicted sex offender, had committed the murder.  McAlister 
related to the jury that appellant also confessed that he pawned some of 
Barbara’s belongings and gave others to a prostitute named Becky or Beverly.
        Second, 
the State also presented other evidence in addition to appellant’s confession 
to McAlister, which considered alone or in connection with the confession, 
showed that the crime actually occurred.  See Salazar, 86 S.W.3d at 
645.  The police found the victim’s body in a field that was within 
walking distance of appellant’s home.  The victim was severely beaten and 
had suffered from multiple fractures to her skull, spine and ribs.  The 
fractures to her head and spine were consistent with her having been beaten with 
a bat or board.  She also suffered fourteen rib fractures that were likely 
caused by crushing blows or kicks using a foot or knee.
        The 
State also called appellant’s neighbor, Floyd Bacon, who shared a duplex with 
appellant and Barbara, to testify.  He testified that at around 10:00 p.m. 
on June 17, 2000, he came home and saw Barbara out on the porch of the duplex 
with personal and household items, including a vacuum.  While Bacon 
watched, appellant came out and began arguing with Barbara.  Bacon went 
back inside his part of the duplex and heard appellant and Barbara arguing and 
after a little while, Bacon heard a noise, a thud, like someone hitting or 
falling against the wall.  Concerned, Bacon went next door to appellant’s 
and knocked on the door.  When appellant answered he looked sweaty and was 
out of breath as though he had been in a struggle.  Bacon told appellant, 
“if you got to hit on her, you need to let her go.”  Appellant replied, 
“Well, she wouldn’t shut up, so I had to hit her.”  Appellant 
wouldn’t let Bacon into his side of the duplex, so Bacon went back to his side 
and didn’t hear anything more from appellant’s side after that. Bacon stayed 
up until 2:30 or 3:00 a.m. the next morning and never heard a car or anyone 
leave the duplex, but he did see appellant go out onto the porch and bring 
Barbara’s things inside.  Bacon never saw or heard from Barbara again.
        Another 
of appellant’s neighbors from a nearby apartment complex, Diana Lewis, also 
testified for the State.  Lewis was a friend and co-worker of Barbara’s 
and saw her almost every day.  Lewis described Barbara as a small, thin 
woman who might have weighed 100 pounds.  She told the jury that Barbara 
had a little dog named Macho that she took everywhere with her.
        The 
last day that Lewis saw Barbara was June 17, 2000.  Barbara came to 
Lewis’s house in the early evening to use the phone.  Barbara was visibly 
upset, like she had been crying.  Barbara told Lewis that she and appellant 
had argued and that she needed to call Lewis’s son so that he could pick her 
up.  Barbara spoke to Lewis’s son and agreed to meet him at the Radisson 
that night so that she could stay with him.
        Appellant 
came to the Lewis’s while Barbara was on the phone and began screaming at her 
and calling her names like “whore” and “bitch.”  Barbara and 
appellant left the Lewis’s, but Barbara never arrived at the Radisson to meet 
Lewis’s son.  As appellant was leaving, he told Lewis’s husband, David, 
that, “if there’s any f------ whore going to put me in jail, I’m going to 
kill them.”
        That 
same evening, Lewis noticed Barbara’s vacuum cleaner and other personal items 
out on the porch, but later that evening the items were gone.  Lewis went 
to bed around midnight and never heard any cars pull up to the duplex that 
night. Barbara did not show up for work the next day.  When Lewis asked 
appellant where Barbara was, he told her that Barbara left on foot and took her 
dog with her.  Barbara never came to pick up her pay checks or personal 
property from work.
        The 
State also presented evidence that appellant pawned some of Barbara’s 
belongings and gave others to a friend, while at the same time contending that 
Barbara had taken all her belongings with her when she left. Rebecca “Becky” 
Martinez testified that on June 18, 2000, she helped appellant pawn some of 
Barbara’s personal items.  Appellant gave Martinez Barbara’s vacuum 
cleaner, glassware, and a couple of comforters.
        After 
appellant and Martinez finished at the pawn shop, they went back to 
appellant’s place and appellant asked Martinez if she wanted “the little dog 
that [Barbara] had had, that she had left.”  Appellant took Martinez to a 
nearby construction site and retrieved the dog from the bottom of a 
barrel.  Appellant told Martinez that if anyone asked her about the dog, to 
say that she found it walking on the side of the road because the police had 
been asking about it.  Barbara’s son Randy testified that Barbara would 
never have left the dog behind or abandoned it and that she treated the dog like 
“one of her children.”  Barbara’s other son David testified that the 
first thing Barbara would have taken with her if she left would have been the 
dog because she loved it like a child.
        After 
the police found Barbara’s body and identified it, Martinez turned over the 
pawn ticket for Barbara’s vacuum cleaner, personal items, and the dog to the 
police.  Martinez also testified that “kind of late” the night of June 
17, 2000, appellant came to her house.  She testified that appellant said 
he had been walking all over downtown because Barbara had left him.  
Martinez described him as being “kind of out of it,” upset, hot, sweaty, and 
wet the night he came to her door.  When Martinez asked appellant why he 
was wet he told her that he washed himself off with a water hose.
        Appellant’s 
version of June 17, 2000 was not consistent.  Barbara regularly met her 
ex-husband at a bar to give him photographs of their children and 
grandchildren.  On June 17, 2000, appellant called the bar and told Donna 
Rains, a bartender, to tell Barbara’s ex-husband that Barbara left with 
someone in a truck and took all of her “stuff” with her.  Appellant 
told one police officer that Barbara left him after they had an argument about 
her dog.  Appellant told Officer Robert Viana that Barbara left in a 
vehicle, but he could not describe it.  Appellant said that Barbara took 
most all of her things except two big items.  Appellant told Sergeant J.C. 
Stockton that Barbara left in a 1978 or 1980 model General Motors Car, possibly 
a Cutlass.  In appellant’s written statement to police, he said that she 
took her dog and left in a 1978 or 1980 Cutlass or GM.  Appellant told 
Barbara’s son, Randy Warfield, that Barbara “grabbed a few things and 
left.”  On June19, 2000, appellant called Randy again and told him that 
Barbara “had left with someone in a car,” but later that same day appellant 
told Randy that she left “with someone in a pickup truck.”  When Diana 
Lewis asked appellant about Barbara, appellant told her that she left on foot 
and took her dog with her.
        After 
reviewing appellant’s confession and all of the other State’s evidence, we 
hold that the evidence was legally sufficient to support the jury’s finding 
that Barbara’s death was caused by appellant’s criminal acts under the 
corpus delicti rule.  We overrule appellant’s third point.
Cause of Death
        In 
points four and five, appellant complains that the State failed to present 
sufficient evidence of the cause of death as alleged in the indictment.  
Applying the appropriate standards, we review the evidence for legal and factual 
sufficiency regarding cause of death.
        The 
State medical examiner testified that Barbara’s remains were mummified and 
weighed less than fifteen pounds when the police found her on July 25, 
2000.  The examiner used x-ray photographs to identify the victim as 
Barbara Gilreath.  Because her body had been exposed to the elements for 
over a month, it no longer contained soft tissue, fluids, or body organs that 
could be tested by the examiner, so he used the skeleton to determine how the 
Barabra died.
        During 
the examination of the body, the examiner found several fractures on the face in 
the right styloid process, right facial bones, the eye socket, and two fractures 
of the jaw bone.  The examiner opined that the injuries were caused by 
blunt force injuries inflicted near or at the time of death.  The breast 
bone or sternum was fractured in two places and her ribs were broken in fourteen 
places.  The fractures of the sternum and ribs were consistent with 
crushing pressure applied from the front to the back like stomping on the 
victim’s chest with a foot or by a knee dropping onto the victim’s 
chest.  The broken ribs would have made it impossible for Barbara to 
breathe and she would have likely asphyxiated.
        Barbara 
also had three cervical spine fractures, three neck fractures, a fracture of the 
right styloid, and a fracture of the hard palate in the mouth.  These 
injuries were consistent with the type of force you get when hit in the head 
with a baseball bat or if kicked or stomped on the side of the head.  The 
examiner ruled that Barbara's death was a homicide, although he admitted on 
cross-examination that without soft tissue or organs he could not rule out that 
her death could have been caused by a stabbing, gunshot wound, drug overdose, or 
heart attack.
        Appellant 
contends that the State’s allegations that appellant caused Barbara’s death 
by striking her with an object, his fist, or foot are not supported by the 
evidence presented by the medical examiner.  A review of the medical 
evidence along with the testimony of the State’s witnesses, and appellant’s 
confession discussed infra reveals that more than sufficient evidence exists to 
support the allegations in the indictment.  Thus, applying the appropriate 
standards of review, we hold that the evidence is both legally[1] 
and factually[2] sufficient to support the trial 
court’s conviction.[3]  We overrule 
appellant’s fourth and fifth points.
The Verdict and Multiple Manner and Means
        In 
his first point, appellant complains that the trial court erred by receiving a 
vague and uncertain jury verdict that conflicted with jury instructions and the 
indictment.  Specifically, appellant complains that the jury’s general 
verdict finding appellant “guilty of the offense of murder, as charged in the 
indictment” was vague because the verdict did not specify the manner and 
means.  The indictment had one count with multiple paragraphs alleging 
murder by different manner and means and the jury instructions charged on three 
of the allegations, differing in the manner and means.
        In 
his second point, appellant complains that the trial court erred by failing to 
provide separate “guilty” and “not guilty” verdict forms for each of the 
three paragraphs describing the different alleged manner and means of the single 
count of murder.  The State responds, contending that the trial court did 
not err in submitting a multiple paragraph jury charge alleging multiple manners 
and means by which appellant caused Barbara's death, nor did it err in failing 
to provide separate verdict forms for each alleged manner and means because the 
trial court is entitled to submit a general verdict form to the jury.
        Alternate 
manner and means of committing a single offense may be charged in the same 
indictment.  Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 
1991).  When an indictment alleges differing methods of committing murder 
in the conjunctive, the jury may properly be charged in the disjunctive, 
allowing the jury to be split on which theory supports the verdict.  Martinez 
v. State, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004).  Where alternate 
theories of committing the same offense are submitted to the jury in the 
disjunctive the jury is authorized to return a general verdict if the evidence 
is sufficient to support a finding under any of the theories submitted.  Zuniga, 
2004 WL 840786, at *9; Rosales v. State, 4 S.W.3d 228, 231 (Tex. Crim. 
App. 1999); Rabbani v. State, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992) cert. 
denied, 509 U.S. 926 (1993); Kitchens, 823 S.W.2d at 258; Patterson 
v. State, 46 S.W.3d 294, 306 (Tex. App.—Fort Worth 2001, no pet.).
        Here, 
the State alleged in the first count of the indictment that appellant committed 
the offense of murder and alleged in the disjunctive four different manner and 
means of committing the offense.  The State waived one of the four 
paragraphs of count one before voir dire.  The theories in the three 
remaining paragraphs alleging different manner and means of the count of murder 
were prosecuted at trial.  Therefore, the trial court properly submitted 
the different manner and means in the disjunctive in the jury charge and 
provided for a general jury verdict.  See Kitchens, 823 S.W.2d at 
258; Price v. State, 59 S.W.3d 297, 301 (Tex. App.—Fort Worth 2001, 
pet. ref’d).  Accordingly, we overrule appellant’s first and second 
points.
Unknown Weapon
        In 
his sixth point, appellant complains that the trial court erred by denying 
appellant’s motion for a directed verdict as to count one.  Specifically, 
he contends the evidence is legally insufficient to support the verdict because 
the State did not prove that the grand jury used due diligence to determine the 
weapon used in the offense before concluding that the weapon or weapons were 
“unknown.”  Appellant argues that the issue of due diligence was raised 
by the medical examiner when he testified that Barabara's injuries were 
consistent with having been struck by a bat or board.
        When 
an indictment alleges that the manner and means used to commit an offense are 
unknown and the evidence presented at trial does not reveal what type of object 
was used, a prima facie showing exists that the object was unknown to the grand 
jury.  Matson v. State, 819 S.W.2d 839, 847 (Tex. Crim. App. 1991); Tidrow 
v. State, 916 S.W.2d 623, 630 (Tex. App.—Fort Worth 1996, no pet.).  
However, when the evidence shows what object was used then the State must prove 
the grand jury unsuccessfully used due diligence to learn the manner or 
means.  Tidrow, 916 S.W.2d at 630.
        Here, 
the evidence presented at trial never revealed what type of object was 
used.  The medical examiner only testified that some of Barbara's injuries 
were “consistent” with having been struck by a baseball bat or board, but 
that it was “possible” that other objects may have been used.  The 
examiner also testified that the injuries appeared to be “blunt force 
injuries” that “may” have been caused by a foot or knee and that it was 
“unlikely” that they were caused by a hand or fist.  No other evidence 
of the type of weapon or weapons used were admitted at trial.  Because the 
evidence did not reveal what type of object was used in the offense, a prima 
facie showing existed that the object was unknown to the grand jury.  See 
Matson, 819 S.W.2d at 847; Tidrow, 916 S.W.2d at 630.  
Accordingly, the State was not required to prove that the grand jury 
unsuccessfully used due diligence to learn the manner or means.  See 
Tidrow, 916 S.W.2d at 630.  We hold that the trial court did not err by 
denying appellant’s motion for a directed verdict on these grounds.  We 
overrule appellant’s sixth point.
Conclusion
        Having 
overruled all of appellant’s points, we affirm the trial court’s judgment.
  
  
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
  
 
PANEL 
A:   LIVINGSTON, DAUPHINOT, and MCCOY, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
July 15, 2004


NOTES
1.  
See Emery v. State, 881 S.W.2d 702, 705 (Tex. Crim. App. 1994) (providing 
legal sufficiency standard of review), cert. denied, 513 U.S. 1192 
(1995); Narvaiz v. State, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992) 
(same), cert. denied, 507 U.S. 975 (1993).
2.  
See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003) 
(holding that a proper factual sufficiency review must include a discussion of 
the most important and relevant evidence that supports the appellant's complaint 
on appeal); Santellan v. State, 939 S.W.2d 155, 165 (Tex. Crim. App. 
1997) (providing factual sufficiency standard of review); Clewis v. State, 
922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (same); see also Zuniga v. State, 
No. 539-02, 2004 WL 840786, at *7 (Tex. Crim. App. Apr. 21, 2004)(considering in 
a factual sufficiency review all of the evidence in a neutral light, and asking 
whether a jury was rationally justified in finding guilt beyond a reasonable 
doubt).
3.  
See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Johnson 
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis, 922 S.W.2d 
at 134.