Tresie Ann Crawford a/k/a Tresoe Ann Crawford

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-299-CR

TRESIE ANN CRAWFORD A/K/A APPELLANT

TRESOE AMM CRAWFORD

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury convicted Appellant Tresie Ann Crawford of murder and assessed her punishment at fifty-five years’ confinement.  In three points, Crawford complains that the evidence is legally and factually insufficient to support the jury’s verdict and that the punishment assessed by the jury is grossly disproportionate to the offense committed.  We will affirm.

II.  Factual Background

On December 25, 2002, Officer S.M. Smith of the Fort Worth Police Department responded to a call reporting a stabbing at an apartment.  Officer Smith was the first officer to arrive at the scene, and he entered the apartment when he heard yelling and crying inside.  A man, later identified as Ardie Walker, was slumped over in a chair; he had a stab wound to his chest and blood stains on his shirt.  Crawford was crying and yelling.  Crawford identified herself as Walker’s common-law wife.  Fire Department and medical personnel arrived and began treating Walker.  He was later transported to John Peter Smith Hospital.

Officer Smith and Crawford spoke outside of the apartment as medical personnel attended to Walker.  Crawford said that she and Walker were alone in her apartment and that she went into the bathroom for a few minutes to change clothes.  While in the bathroom, she heard the voice of Walker’s ex-wife, Bevelon Perkins; Perkins was speaking to Walker.  When she came out of the bathroom, Walker had his hand on his chest and appeared to to be in pain, but she did not see Perkins.  Sergeant C.E. Hayes of the Fort Worth Police Department arrived later and escorted Crawford to his patrol car to get her away from the crime scene and to help her calm down.  He asked Crawford what had happened; she again stated that she went into her bathroom, that she heard a voice that sounded like Walker’s ex-wife, and that she left the bathroom and saw that Walker had been stabbed.  Crawford eventually gave officers permission to search her apartment. 

Detective J.A. Hernandez of the Fort Worth Police Department also responded to the call on December 25, 2002.  He examined the crime scene and audio-taped a conversation he had with Crawford.  In that conversation, Crawford explained that she had partied the night before with a man named Freddie.  She and Freddie had visited Kristi Armstead Smith’s
(footnote: 2) residence early in the morning that day and had borrowed Smith’s car to do some shopping. They picked up a friend, Michelle Carter, after shopping and arrived back at Crawford’s apartment shortly before noon.  Smith arrived and retrieved her car, and Carter and Freddie eventually left, leaving Crawford and Walker alone in the apartment.  Crawford said she went into the bathroom to change clothes. Crawford said that while she was in the bathroom the only voice she heard was Walker’s; she told Detective Hernandez that she had not told another officer earlier that she had heard Perkins’s voice. 

Smith testified that Crawford called her on December 25, 2002 at around 9:00 or 10:00 p.m. and asked if Smith would “come get her.”  Smith and two friends, Sheila and Marquella Gordon, went to Crawford’s apartment and picked up Crawford.  They followed a squad car to the police department sector headquarters where Crawford changed clothes.  After changing clothes, Crawford joined Smith, Sheila, and Marquella in Smith’s car, and the group drove to John Peter Smith Hospital to check on Walker.  During the drive, Smith asked Crawford what had happened, and Crawford stated that she and Walker had been arguing, that she held a knife up to Walker and stabbed him in his heart.  She said that she thought she had killed Walker.  Crawford further related that the police were searching her apartment for a knife, but that they would not find it because it was hidden in her room “real good.”  Smith testified that while they were at the hospital Crawford said she would turn herself in if Walker survived, but she would run if he did not.  Sheila testified that she overheard Crawford in the car say that she thought she had killed Walker and that she hid the knife somewhere where it would not be found. 

Walker subsequently died; the medical examiner listed the cause of death as a stab wound to the chest.  

A warrant was issued for Crawford’s arrest and it was forwarded to Detective Clay Worcester of the Montezuma County Sheriff’s Office in Cortez, Colorado.  Authorities there located Crawford in a trailer park and arrested her. Crawford identified herself as “Teresa Jackson” before officers took her into custody, at which point she offered to tell officers her real name.  She waived extradition and returned to Texas voluntarily where a jury convicted her of murder. 

III.  Legal and Factual Sufficiency

In her first and second points, Crawford argues generally that the evidence is legally and factually insufficient to support the jury’s verdict because the State did not meet its burden of proof.  The State maintains that the evidence is both legally and factually sufficient. 

A.  Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In contrast, when reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.  

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Evidence Legally & Factually Sufficient

A person commits the offense of murder if she intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.  
Tex. Penal Code Ann.
 § 19.02(b)(1), (2) (Vernon 2003).  Where alternative theories of committing the same offense are submitted to the jury disjunctively, it is proper for the jury to return a general verdict if there is sufficient evidence to support a conviction under any of the theories alleged.  
Kitchens v. State
, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991), 
cert.denied
, 504 U.S. 958 (1992); 
Price v. State
, 59 S.W.3d 297, 301 (Tex. App.—Fort Worth 2001, pet. ref’d).

Here, the indictment contained two paragraphs alleging the offense of murder.  The first paragraph charged that on December 25, 2002 Crawford

did then and there intentionally or knowingly cause the death of an individual, Ardie Walker, by stabbing him with a deadly weapon, to-wit: a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury.

 

The second paragraph charged that Crawford

did then and there intentionally with the intent to cause serious bodily injury to Ardie Walker, commit an act clearly dangerous to human life, namely, by stabbing him with a deadly weapon, to-wit: a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury, which caused the death of Ardie Walker.

Accordingly, the jury was charged that it could find Crawford guilty of the offense of murder as charged in paragraphs one or two of the indictment if it found beyond a reasonable doubt that she committed the offense as alleged in either paragraph. 

The evidence established that Crawford and Walker were alone immediately before Walker was stabbed.  Although Crawford initially told officers that she heard Walker’s ex-wife’s voice while she was in the bathroom, she later denied having made this statement.  According to Sheila and Smith, in the car on the way to the hospital Crawford said that she stabbed Walker.  She said that she thought she had killed Walker and that she had hidden the knife. 

On cross-examination, Smith admitted that she did not have a good relationship with Crawford’s son, Fisher.  Sheila admitted that she was incarcerated at the time of the trial.  Freddie Stevenson testified for the defense.  He testified that Crawford and Walker were kissing, hugging, and getting along while he was at Crawford’s apartment that night.  Freddie, however, left before Walker was stabbed, and agreed that he could not testify about events that transpired at Crawford’s apartment after he left. 

The jury is the sole judge of the weight and credibility of the evidence and, likewise, makes
 
determinations involving the credibility and demeanor of witnesses.  
Margraves
, 34 S.W.3d at 919; 
Zuniga
, 144 S.W.3d at 481.
  
Here, v
iewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Crawford committed the offense of murder.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  Viewing all the evidence in a neutral light, favoring neither party, we also conclude that the evidence, taken alone, is not too weak to support the finding of guilt beyond a reasonable doubt and that the contrary evidence is not so strong that guilt cannot be proven beyond a reasonable doubt.  
Zuniga
, 144 S.W.3d at 484-85.  We overrule Crawford’s first and second points.

IV.  Disproportionate Sentence

In her third point, Crawford argues that her punishment is grossly disproportionate to the offense she committed.  The State counters that Crawford waived this point by failing to preserve error. 

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  Even constitutional errors may be waived by failing to preserve error.  
See Curry v. State
, 910 S.W.2d 490, 496 & n.2 (Tex. Crim. App. 1995).

The jury assessed Crawford’s punishment at fifty-five years’ confinement. Crawford did not raise a disproportionate punishment complaint when the trial court imposed her sentence or in a motion for new trial or in any other type of post-verdict motion.  
See Curry, 
910 S.W.2d at 497 (reasoning that constitutional rights, including the right to be free from cruel and unusual punishment, may be forfeited); 
Schneider v. State
, 645 S.W.2d 463, 466 (Tex. Crim. App. 1983) (same)
.
(footnote: 3)  Accordingly, Crawford has forfeited this point.  
Tex. R. App. P.
 33.1(a);   We overrule Crawford’s third point.

V.  Conclusion

Having overruled Crawford’s three points, we affirm the trial court’s judgment.
 
        

PER CURIAM

PANEL F: WALKER, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: June 23, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Smith is the mother of two children with Crawford’s son, Charles Fisher.

3:
We recognize that in 
Ray v. State
, this court addressed the constitutionality of the defendant’s punishment despite his failure to raise an objection at trial.  119 S.W.3d 454, 458-59 (Tex. App.—Fort Worth 2003, pet. ref’d).  However, there is no majority opinion in 
Ray 
and it is not binding precedent.  
See Pearson v. State
, 994 S.W.2d 176, 177 n.3 (Tex. Crim. App. 1999) (holding plurality opinion not binding precedent).