COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-299-CR
 
  
TRESIE 
ANN CRAWFORD A/K/A                                              APPELLANT
TRESOE 
AMM CRAWFORD
  
V.
   
THE 
STATE OF TEXAS                                                                  STATE
  
  
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
 
I. Introduction
        A 
jury convicted Appellant Tresie Ann Crawford of murder and assessed her 
punishment at fifty-five years’ confinement. In three points, Crawford 
complains that the evidence is legally and factually insufficient to support the 
jury’s verdict and that the punishment assessed by the jury is grossly 
disproportionate to the offense committed. We will affirm.
II. Factual 
Background
        On 
December 25, 2002, Officer S.M. Smith of the Fort Worth Police Department 
responded to a call reporting a stabbing at an apartment. Officer Smith was the 
first officer to arrive at the scene, and he entered the apartment when he heard 
yelling and crying inside. A man, later identified as Ardie Walker, was slumped 
over in a chair; he had a stab wound to his chest and blood stains on his shirt. 
Crawford was crying and yelling. Crawford identified herself as Walker’s 
common-law wife. Fire Department and medical personnel arrived and began 
treating Walker. He was later transported to John Peter Smith Hospital.
        Officer 
Smith and Crawford spoke outside of the apartment as medical personnel attended 
to Walker. Crawford said that she and Walker were alone in her apartment and 
that she went into the bathroom for a few minutes to change clothes. While in 
the bathroom, she heard the voice of Walker’s ex-wife, Bevelon Perkins; 
Perkins was speaking to Walker. When she came out of the bathroom, Walker had 
his hand on his chest and appeared to to be in pain, but she did not see 
Perkins. Sergeant C.E. Hayes of the Fort Worth Police Department arrived later 
and escorted Crawford to his patrol car to get her away from the crime scene and 
to help her calm down. He asked Crawford what had happened; she again stated 
that she went into her bathroom, that she heard a voice that sounded like 
Walker’s ex-wife, and that she left the bathroom and saw that Walker had been 
stabbed. Crawford eventually gave officers permission to search her apartment.
        Detective 
J.A. Hernandez of the Fort Worth Police Department also responded to the call on 
December 25, 2002. He examined the crime scene and audio-taped a conversation he 
had with Crawford. In that conversation, Crawford explained that she had partied 
the night before with a man named Freddie. She and Freddie had visited Kristi 
Armstead Smith’s[2] residence early in the morning 
that day and had borrowed Smith’s car to do some shopping. They picked up a 
friend, Michelle Carter, after shopping and arrived back at Crawford’s 
apartment shortly before noon. Smith arrived and retrieved her car, and Carter 
and Freddie eventually left, leaving Crawford and Walker alone in the apartment. 
Crawford said she went into the bathroom to change clothes. Crawford said that 
while she was in the bathroom the only voice she heard was Walker’s; she told 
Detective Hernandez that she had not told another officer earlier that she had 
heard Perkins’s voice.
        Smith 
testified that Crawford called her on December 25, 2002 at around 9:00 or 10:00 
p.m. and asked if Smith would “come get her.” Smith and two friends, Sheila 
and Marquella Gordon, went to Crawford’s apartment and picked up Crawford. 
They followed a squad car to the police department sector headquarters where 
Crawford changed clothes. After changing clothes, Crawford joined Smith, Sheila, 
and Marquella in Smith’s car, and the group drove to John Peter Smith Hospital 
to check on Walker. During the drive, Smith asked Crawford what had happened, 
and Crawford stated that she and Walker had been arguing, that she held a knife 
up to Walker and stabbed him in his heart. She said that she thought she had 
killed Walker. Crawford further related that the police were searching her 
apartment for a knife, but that they would not find it because it was hidden in 
her room “real good.” Smith testified that while they were at the hospital 
Crawford said she would turn herself in if Walker survived, but she would run if 
he did not. Sheila testified that she overheard Crawford in the car say that she 
thought she had killed Walker and that she hid the knife somewhere where it 
would not be found.
        Walker 
subsequently died; the medical examiner listed the cause of death as a stab 
wound to the chest.
        A 
warrant was issued for Crawford’s arrest and it was forwarded to Detective 
Clay Worcester of the Montezuma County Sheriff’s Office in Cortez, Colorado. 
Authorities there located Crawford in a trailer park and arrested her. Crawford 
identified herself as “Teresa Jackson” before officers took her into 
custody, at which point she offered to tell officers her real name. She waived 
extradition and returned to Texas voluntarily where a jury convicted her of 
murder.
III. Legal and 
Factual Sufficiency
        In 
her first and second points, Crawford argues generally that the evidence is 
legally and factually insufficient to support the jury’s verdict because the 
State did not meet its burden of proof. The State maintains that the evidence is 
both legally and factually sufficient.
        A. Standards of Review
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State, 133 S.W.3d 
618, 620 (Tex. Crim. App. 2004).
        This 
standard gives full play to the responsibility of the trier of fact to resolve 
conflicts in the testimony, to weigh the evidence, and to draw reasonable 
inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319, 
99 S. Ct. at 2789. The trier of fact is the sole judge of the weight and 
credibility of the evidence. See Tex. 
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal 
sufficiency review, we may not re-evaluate the weight and credibility of the 
evidence and substitute our judgment for that of the fact finder. Dewberry v. 
State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1131 (2000). We must resolve any inconsistencies in the evidence in favor 
of the verdict. Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 
2000).
        In 
contrast, when reviewing the factual sufficiency of the evidence to support a 
conviction, we are to view all the evidence in a neutral light, favoring neither 
party. See Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004). 
The only question to be answered in a factual sufficiency review is whether, 
considering the evidence in a neutral light, the fact finder was rationally 
justified in finding guilt beyond a reasonable doubt. Id. at 484. There 
are two ways evidence may be factually insufficient: (1) the evidence supporting 
the verdict or judgment, considered by itself, is too weak to support the 
finding of guilt beyond a reasonable doubt; or (2) when there is evidence both 
supporting and contradicting the verdict or judgment, weighing all of the 
evidence, the contrary evidence is so strong that guilt cannot be proven beyond 
a reasonable doubt. Id. at 484-85. “This standard acknowledges that 
evidence of guilt can ‘preponderate’ in favor of conviction but still be 
insufficient to prove the elements of the crime beyond a reasonable doubt.” Id. 
at 485. In other words, evidence supporting a guilty finding can outweigh the 
contrary proof but still be insufficient to prove the elements of an offense 
beyond a reasonable doubt. Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses. Id. at 481; Cain v. State, 958 S.W.2d 
404, 407 (Tex. Crim. App. 1997). We may not substitute our judgment for that of 
the fact finder’s. Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the evidence. Id. 
at 484, 486-87. An opinion addressing factual sufficiency must include a 
discussion of the most important and relevant evidence that supports the 
appellant’s complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 
(Tex. Crim. App. 2003).
        B. Evidence Legally & Factually Sufficient
        A 
person commits the offense of murder if she intentionally or knowingly causes 
the death of an individual or intends to cause serious bodily injury and commits 
an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1), (2) 
(Vernon 2003). Where alternative theories of committing the same offense are 
submitted to the jury disjunctively, it is proper for the jury to return a 
general verdict if there is sufficient evidence to support a conviction under 
any of the theories alleged. Kitchens v. State, 823 S.W.2d 256, 258 (Tex. 
Crim. App. 1991), cert.denied, 504 U.S. 958 (1992); Price v. State, 
59 S.W.3d 297, 301 (Tex. App.—Fort Worth 2001, pet. ref’d).
        Here, 
the indictment contained two paragraphs alleging the offense of murder. The 
first paragraph charged that on December 25, 2002 Crawford
   
did then and there intentionally or knowingly cause the death of an individual, 
Ardie Walker, by stabbing him with a deadly weapon, to-wit: a knife, that in the 
manner of its use or intended use was capable of causing death or serious bodily 
injury.
 
 
The 
second paragraph charged that Crawford
   
did then and there intentionally with the intent to cause serious bodily injury 
to Ardie Walker, commit an act clearly dangerous to human life, namely, by 
stabbing him with a deadly weapon, to-wit: a knife, that in the manner of its 
use or intended use was capable of causing death or serious bodily injury, which 
caused the death of Ardie Walker.
  
 
Accordingly, 
the jury was charged that it could find Crawford guilty of the offense of murder 
as charged in paragraphs one or two of the indictment if it found beyond a 
reasonable doubt that she committed the offense as alleged in either paragraph.
        The 
evidence established that Crawford and Walker were alone immediately before 
Walker was stabbed. Although Crawford initially told officers that she heard 
Walker’s ex-wife’s voice while she was in the bathroom, she later denied 
having made this statement. According to Sheila and Smith, in the car on the way 
to the hospital Crawford said that she stabbed Walker. She said that she thought 
she had killed Walker and that she had hidden the knife.
        On 
cross-examination, Smith admitted that she did not have a good relationship with 
Crawford’s son, Fisher. Sheila admitted that she was incarcerated at the time 
of the trial. Freddie Stevenson testified for the defense. He testified that 
Crawford and Walker were kissing, hugging, and getting along while he was at 
Crawford’s apartment that night. Freddie, however, left before Walker was 
stabbed, and agreed that he could not testify about events that transpired at 
Crawford’s apartment after he left.
        The 
jury is the sole judge of the weight and credibility of the evidence and, 
likewise, makes determinations involving the credibility and demeanor of 
witnesses. Margraves, 34 S.W.3d at 919; Zuniga, 144 S.W.3d at 481. 
Here, viewing the evidence in the light most favorable to the verdict, we hold 
that a rational trier of fact could have found beyond a reasonable doubt that 
Crawford committed the offense of murder. Jackson, 443 U.S. at 319, 99 S. 
Ct. at 2789. Viewing all the evidence in a neutral light, favoring neither 
party, we also conclude that the evidence, taken alone, is not too weak to 
support the finding of guilt beyond a reasonable doubt and that the contrary 
evidence is not so strong that guilt cannot be proven beyond a reasonable doubt. 
Zuniga, 144 S.W.3d at 484-85. We overrule Crawford’s first and second 
points.
IV. 
Disproportionate Sentence
        In 
her third point, Crawford argues that her punishment is grossly disproportionate 
to the offense she committed. The State counters that Crawford waived this point 
by failing to preserve error.
        To 
preserve a complaint for our review, a party must have presented to the trial 
court a timely request, objection, or motion that states the specific grounds 
for the desired ruling if they are not apparent from the context of the request, 
objection, or motion. Tex. R. App. P. 
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) 
(op. on reh’g), cert. denied, 526 U.S. 1070 (1999). Further, the trial 
court must have ruled on the request, objection, or motion, either expressly or 
implicitly, or the complaining party must have objected to the trial court’s 
refusal to rule. Tex. R. App. P. 
33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). 
Even constitutional errors may be waived by failing to preserve error. See 
Curry v. State, 910 S.W.2d 490, 496 & n.2 (Tex. Crim. App. 1995).
        The 
jury assessed Crawford’s punishment at fifty-five years’ confinement. 
Crawford did not raise a disproportionate punishment complaint when the trial 
court imposed her sentence or in a motion for new trial or in any other type of 
post-verdict motion. See Curry, 910 S.W.2d at 497 (reasoning that 
constitutional rights, including the right to be free from cruel and unusual 
punishment, may be forfeited); Schneider v. State, 645 S.W.2d 463, 466 
(Tex. Crim. App. 1983) (same).[3]   
Accordingly, Crawford has forfeited this point. Tex. R. App. P. 33.1(a); We overrule 
Crawford’s third point.
V. Conclusion
        Having 
overruled Crawford’s three points, we affirm the trial court’s judgment.
   
   
                                                          PER 
CURIAM
 
 
  
PANEL 
F:   WALKER, J.; CAYCE, C.J.; and LIVINGSTON, J.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
June 23, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Smith is the mother of two children with Crawford’s son, Charles Fisher.
3.  
We recognize that in Ray v. State, this court addressed the 
constitutionality of the defendant’s punishment despite his failure to raise 
an objection at trial. 119 S.W.3d 454, 458-59 (Tex. App.—Fort Worth 2003, pet. 
ref’d). However, there is no majority opinion in Ray and it is not 
binding precedent. See Pearson v. State, 994 S.W.2d 176, 177 n.3 (Tex. 
Crim. App. 1999) (holding plurality opinion not binding precedent).