ACCEPTED
06-14-00024-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/23/2014 11:57:46 PM
DEBBIE AUTREY
CLERK

# IN THE COURT OF APPEALS

## SIXTH DISTRICT OF TEXAS

## TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

12/30/2014 3:12:00 PM

DEBBIE AUTREY
Clerk

| | | |
|---|---|---|
| ESAW LAMPKIN, | § | |
| APPELLANT | § | |
| | § | |
| VS. | § | APPEAL NO. 06-14-00024-CR |
| | § | |
| THE STATE OF TEXAS, | § | |
| APPELLEE | § | |

## APPELLEE'S BRIEF

### APPEAL FROM THE 124th JUDICIAL DISTRICT COURT,

### IN AND FOR GREGG COUNTY, TEXAS, CAUSE NO. 42,897-B

### THE HONORABLE ALFONSO CHARLES, DISTRICT JUDGE, PRESIDING

**L. Charles van Cleef**
**State Bar No. 00786305**

**P.O. Box 2432**
**Longview, Texas 75606-2432**
**903-248-8244 Telephone**
**903-248-8249 Facsimile**
**charles@vancleef.pro**

**COUNSEL FOR APPELLEE**

## I. TABLE OF CONTENTS

I. TABLE OF CONTENTS ................................................................................- 2 -

II. IDENTITY OF PARTIES AND COUNSEL ................................................- 5 -

III. TABLE OF AUTHORITIES ..........................................................................- 6 -

IV. STATEMENT OF THE CASE .......................................................................- 8 -

V. STATEMENT REGARDING ORAL ARGUMENT .......................................- 9 -

VI. ISSUES PRESENTED ....................................................................................- 9 -

VII. STATEMENT OF FACTS ..............................................................................- 9 -

VIII. ISSUE ONE: ..................................................................................................- 9 -

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO APPELLANT
BECAUSE, KNOWING THAT HIS CLIENT WAS MENTALLY UNSTABLE AND
HAVING STATED THAT IN LETTERS TO HIS CLIENT, HE FAILED TO
INVESTIGATE APPELLANT'S MENTAL STATUS ........................................- 9 -
    A. Summary of the Argument...................................................................- 9 -
    B. Argument And Discussion ...............................................................- 10 -

IX. ISSUE TWO: ...............................................................................................- 15 -

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO APPELLANT
BECAUSE HE FAILED TO PRESENT MITIGATING EVIDENCE AT PUNISHMENT . - 15
-
    A. Summary of the Argument.................................................................- 15 -
    B. Argument And Discussion .................................................................- 15 -

X. ISSUES THREE and FOUR: .......................................................................- 17 -

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TOAPPELLANT
BECAUSE, KNOWING THAT HIS CLIENT WAS MENTALLY UNSTABLE AND
HAVING STATED THAT IN LETTERS TO HIS CLIENT, AT THE LAST MINUTE
DURING TRIAL HE ORDERED THAT APPELLANT TAKE THE WITNESS STAND AT
THE PUNISHMENT PHASE ........................................................................- 17 -
TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO APPELLANT,
PLACING APPELLANT ON THE WITNESS STAND AT PUNISHMENT WITHOUT
ADVISING HIM OF HIS FIFTH AMENDMENT RIGHTS AND OF HOW HE WOULD BE
CROSS-EXAMINED ABOUT ALL OF HIS PAST CONVICTIONS AND ABOUT THIS
CASE, EXPOSING HIM TO UNFAVORABLE SCRUTINY BY THE JURY, AND
ENABLING THE STATE TO ARGUE THAT HE "LIED", WITHOUT OBJECTION....- 17 -
    C. Summary of the Argument.................................................................- 17 -
    D. Argument And Discussion .................................................................- 18 -

XI. ISSUE FIVE: ...............................................................................................- 20 -

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO APPELLANT BECAUSE,

KNOWING THAT HIS CLIENT WAS MENTALLY UNSTABLE AND HAVING

QUESTIONED APPELLANT'S COMPETENCE, AND HAVING STATED THAT IN

LETTERS TO HIS CLIENT, HE FAILED TO PURSUE AN EXAMINATION AND

HEARING ON THE QUESTION OF COMPETENCE ............................................- 20 -

    E.      Summary of the Argument.......................................................- 20 -
    B.      Argument And Discussion ......................................................- 20 -

XII. ISSUE SIX:.....................................................................................- 22 -

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO APPELLANT BECAUSE

HE FAILED TO OBJECT TO HARMFUL, PREJUDICIAL, EVIDENCE...........................- 22 -

    C.      Summary of the Argument.......................................................- 22 -
    B.      Argument And Discussion ......................................................- 22 -

XIII.     ISSUE SEVEN:.........................................................................- 23 -

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO APPELLANT BECAUSE

HE FAILED TO OBJECT AND CARRY FORWARD THAT OBJECTION TO A MOTION

FOR MISTRIAL WHEN STATE'S COUNSEL, IN ARGUMENT AT THE

GUILT/INNOCENCE PHASE, MADE REPEATED COMMENTS ON THE FAILURE OF

APPELLANT TO TESTIFY, IN VIOLATION OF THE FIFTH AMENDMENT .................- 23 -

    C.      Summary of the Argument.......................................................- 23 -
    B.      Argument And Discussion ......................................................- 24 -

XIV.     ISSUE EIGHT:.........................................................................- 27 -

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO APPELLANT AT THE

PUNISHMENT PHASE WHEN HE MADE ARGUMENT THAT WAS PREJUDICIAL TO

APPELLANT............................................................................................- 27 -

    C.      Summary of the Argument.......................................................- 27 -
    B.      Argument And Discussion ......................................................- 27 -

XV. ISSUE NINE: .................................................................................- 27 -

TRIAL COUNSEL RENDERED INEFFFECTIVE ASSISTANCE BECAUSE HE FAILED TO

OBJECT TO THE ADMISSION OF EVIDENCE DERIVED FROM A BLOOD SAMPLE

DRAWN UNDER CIRCUMSTANCES THAT VIOLATED THE STANDARDS OF

SCHMERBER V. CALIFORNIA AND ROCHIN V. CALIFORNIA ...................................- 27 -

    C.      Summary of the Argument.......................................................- 28 -
    D.      Argument And Discussion ......................................................- 28 -

XVI.     ISSUES TEN AND ELEVEN: .....................................................- 30 -

THE EVIDENCE WAS LEGALLY INSUFFICIENT BECAUSE THERE WAS NO

EVIDENCE BY RETROGRADE EXTRAPOLATION THAT THE RESULTS OF THE BAC

TEST SHOWED INTOXICATION AT THE TIME OFTHE OFFENSE, NOR WERE THE

OBSERVATIONS BY AGENTS OF THE STATE SUFFICIENT TO INDICATE LOSS OF NORMAL USE OF MENTAL AND PHYSICAL FACULTIES ............................................- 30 -

THE EVIDENCE OF BAC CONCENTRATION SHOULD HAVE BEEN EXCLUDED AND THE FAILURE TO SO EXCLUDE WAS HARMFUL TO APPELLANT UNDER THE BAGHERI DECISION, SUCH THAT IT CANNOT BE SAID THAT THE VERDICT OF GUILTY WAS NOT AFFECTED BY THE JURY'S CONSIDERATION OF THE BAC EVIDENCE. IN ARGUMENT, THE STATE URGED THE JURY TO FIND GUILT UNDER EITHER THEORY ..........................................................................................- 31 -

    E.    Summary of the Argument..............................................................- 31 -
    F.    Argument And Discussion..............................................................- 32 -
XVII.    ISSUES TWELVE and THIRTEEN:................................................- 37 -

THE TRIAL COURT REVERSIBLY ERRED IN FAILING TO SUPPRESS EVIDENCE TAKEN IN VIOLATION OF MIRANDA..............................................................- 37 -

THE TRIAL COURT REVERSIBLY ERRED IN FAILING TO INCLUDE ANART. 38.23 INSTRUCTION ..........................................................................................- 37 -

    G.    Summary of the Argument..............................................................- 37 -
    B.    Argument And Discussion ..............................................................- 38 -
XVIII.    ISSUE FOURTEEN:.............................................................................- 41 -

TRIAL COURT ERRED, ALLOWED EXTRANEOUS OFFENSE EVIDENCE .................- 41 -

    C.    Summary of the Argument..............................................................- 41 -
    B.    Argument And Discussion ..............................................................- 42 -
XIX.    CONCLUSION AND PRAYER.........................................................- 42 -

XX. CERTIFICATE OF SERVICE.................................................................- 44 -

XXI.    CERTIFICATE OF COMPLIANCE ....................................................- 45 -

XXII.    APPENDIX .................................................................................- 46 -

## II. IDENTITY OF PARTIES AND COUNSEL

Supplement, TEX. R. APP. P. 38.2(a)(1)(A):

L. CHARLES VAN CLEEF, COUNSEL FOR APPELLANT
P.O. DRAWER 2432
LONGVIEW, TEXAS 75606-2432

## III.  TABLE OF AUTHORITIES

**Cases**

Annis v. State, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979) .................................................- 36 -

Bagheri v. State, 119 S.W.3d 755, 762 (Tex. Crim. App. 2003) ...............................................- 37 -

Bible v. State, 162 S.W.3d 234, 241-42 (Tex.Crim.App. 2005) ...............................................- 39 -

Breithaupt v. Abram, 352 U.S. 432, 435, 77 S. Ct. 408, 1 L. Ed. 2d 448, 451 (1957)..............- 29 -

Burks v. State, 792 S.W.2d 835, 840 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd)..........- 12 -

Burns v. State, 298 S.W.3d 697 (Tex. App. – San Antonio 2009, no pet.) ..............................- 37 -

Bustamante v. State, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).........................................- 24 -

Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992) .................................................- 11 -

Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ..............................................- 35 -

Cook v. State, 858 S.W.2d 467, 473 (Tex.Crim.App.1993).....................................................- 25 -

Ervin v. State, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) .............- 35 -

Ex Parte Bagley, 509 S.W.2d 332, 337-38 (Tex.Crim.App. 1974) ..........................................- 39 -

Ex Parte Cruz, 739 S.W.2d 53, 57-58 (Tex. Crim. App. 1987)...............................................- 22 -

Ex parte LaHood, 401 S.W.3d 45, 49 (Tex.Crim.App. 2013) ........................................ - 10 -, - 11 -

Ex parte Martinez, 330 S.W.3d 891, 900 (Tex.Crim.App. 2011)............................................- 10 -

Ex parte Moore, 395 S.W.3d 152, 156-57 (Tex.Crim.App. 2013) ...........................................- 10 -

Forte v. State, 707 S.W.2d 89, 94-95 (Tex. Crim. App. 1986).................................................- 33 -

Franks v. State, 712 S.W.2d 858, 860-61 (Tex.App.--Houston [1st Dist.] 1986, *pet. ref'd*) ....- 39 -

Fuentes v. State, 991 S.W.2d 267, 275 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026, 120 S. Ct. 541, 145 L. Ed. 2d 420 (1999) ...........................................................................................- 25 -

Hooper v. State, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007) ...............................................- 35 -

In re Winship, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071, 25 L.Ed.2d 368 (1970)....................- 35 -

Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) ..............................................- 23 -

Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)...........- 35 -

Jones v. State, 119 S.W.3d 766, 773 n.13, 795 (Keller, P.J. concurring)(Tex.Crim.App. 2003)- 39 -

Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009)................................................- 35 -

Madden v. State, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007) ........................................- 40 -

Mata v. State, 46 S.W.3d 902 (Tex. Crim. App. 2001) ...........................................................- 37 -

McDaniel v. State, 98 S.W.3d 704, 709 (Tex. Crim. App. 2003)..............................................- 12 -

Mireles v. Texas Dep't of Pub. Safety, 9 S.W.3d 128, 130 (Tex. 1999)..................................- 32 -

Mitchell v. State, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002) ................................................- 11 -

Moore v. State, 999 S.W.2d 385, 394 (Tex. Crim. App. 1999), *cert. denied*, 530 U.S. 1216, 147
    L. Ed. 2d 252, 120 St. Ct. 2220 (2000)................................................................................- 12 -

O'Neal v. State, 999 S.W.2d 826, 832 (Tex. App.--Tyler 1999, no pet.) .................................- 33 -

Patrick v. State, 906 S.W.2d 481, 490-91 (Tex. Crim. App.), *cert. denied*, 517 U.S. 1106, 116 S.
    Ct. 1323, 134 L. Ed. 2d 475 (1996) .....................................................................................- 25 -

Price v. State, 59 S.W.3d 297, 300 (Tex. App.--Fort Worth 2001, pet. ref'd) ..........................- 33 -

Rochin v. California, 342 U.S. 165, 166, 72 S. Ct. 205, 96 L. Ed. 183, 187 (1952) .................- 29 -

Rylander v. State, 101 S.W.3d 107, 110 (Tex.Crim.App. 2003).................................................- 10 -

Schmerber v. California, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966)  - 28 -, -
    29 -

State v. Gill, 967 S.W.2d 540, 541 (Tex. App.--Austin 1998, pet. ref'd) .................................- 11 -

State v. Johnston, 336 S.W.3d 649, 658 (Tex.Crim.App.), *cert denied*, Johnston v. Texas, 132 S.
    Ct. 212 (2011) ..................................................................................................- 28 -, - 29 -

Strickland v. Washington, 466 U.S. 668, 683-86, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984)..-
    10 -, - 11 -

Thompson v. State, 9 S.W.3d 808, 814 (Tex.Crim.App. 1999) ....................................- 11 -, - 16 -

Wead v. State, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004) .................................................- 25 -

Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)................................- 35 -, - 36 -

**Statutes**
TEX. CODE CRIM. PROC.art. 46.02 § 1A(a) .............................................................................- 12 -

TEX. PEN. CODE § 49.04(a) .....................................................................................................- 36 -

**IN THE COURT OF APPEALS**

**SIXTH DISTRICT OF TEXAS**

**TEXARKANA, TEXAS**

| | | |
|---|---|---|
| **ESAW LAMPKIN,** | § | |
| **APPELLANT** | § | |
| | § | |
| **VS.** | § | **APPEAL NO. 06-14-00024-CR** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| **APPELLEE** | § | |

---

## APPELLEE'S BRIEF

---

**TO THE HONORABLE JUSTICES OF SAID COURT:**

Comes now L. CHARLES VAN CLEEF, counsel for Appellee STATE OF TEXAS, and files this, his "Appellee's Brief".

### IV. STATEMENT OF THE CASE

Appellee is not dissatisfied with the appellant's statement of the case. TEX. R. APP. P. 38.2(a)(1)(B).

## V. STATEMENT REGARDING ORAL ARGUMENT

Oral argument may assist the resolution of this Appeal.

## VI. ISSUES PRESENTED

Appellee is not dissatisfied with the appellant's list of issues presented and will respond in the order in which they were presented. TEX. R. APP. P. 38.2(a)(1)(B).

## VII. STATEMENT OF FACTS

Appellee is not dissatisfied with the appellant's statement of facts; however, the appellant was constrained by the word/page requirements and, where necessary to aid understanding, the appellee will repeat those portions of the record relevant to the court's determination. TEX. R. APP. P. 38.2(a)(1)(B).

## VIII. ISSUE ONE:

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO APPELLANT BECAUSE, KNOWING THAT HIS CLIENT WAS MENTALLY UNSTABLE AND HAVING STATED THAT IN LETTERS TO HIS CLIENT, HE FAILED TO INVESTIGATE APPELLANT'S MENTAL STATUS**

### A. SUMMARY OF THE ARGUMENT

Based on testimony from a hearing on the Appellant's Motion for New Trial, the appellant contends that his trial counsel was ineffective for failing to raise the issue of his competency. Specifically, the appellant claims that trial counsel expressed concern, in two letters during the month of September, 2013, regarding the "mental stability" and "mental competency" of his client; those letters were sent to the appellant. See Appellant's Appendix B and C. The appellant complains that trial counsel did not obtain TDCJ health records, which appellate counsel obtained and admitted during the hearing

on the appellant's motion for new trial. The appellant contends that these documents indicate that the appellant has an IQ of 66 or 73. The appellant also highlights three portions of the trial record in which trial counsel claimed that the appellant was confused, rather than intoxicated, and the appellant stated that he was not good at math.

These matters were raised in Appellant's Amended Motion for New Trial. CR 27. They were also the subject of testimony in the hearing on Appellant's Motion for New Trial. See, generally, RR volume 9 beginning at 23. The motion was denied, and correctly so. CR 448-9.

## B. ARGUMENT AND DISCUSSION

The standard of review for ineffective assistance of counsel is well known to the court and amply stated in the appellant's brief. Texas courts apply the standard set forth in Strickland v. Washington, 466 U.S. 668, 683-86, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984). Ex parte LaHood, 401 S.W.3d 45, 49 (Tex.Crim.App. 2013); Ex parte Martinez, 330 S.W.3d 891, 900 (Tex.Crim.App. 2011). Under that standard, the applicant is required to show that: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and according to the necessity of the case, and (2) counsel's performance prejudiced his defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; LaHood, 401 S.W.3d at 49; Ex parte Moore, 395 S.W.3d 152, 156-57 (Tex.Crim.App. 2013). A failure to make a showing under either prong defeats an ineffective assistance claim. See Rylander v. State, 101 S.W.3d 107, 110 (Tex.Crim.App. 2003). When reviewing a claim of ineffective assistance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. Counsel's action or inaction will be found to be reasonable if the record is silent as to the facts, circumstances, or rationale behind a particular course of action. Thompson v. State, 9 S.W.3d 808, 814 (Tex.Crim.App. 1999). Prejudice requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Mitchell v. State, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002). Reasonable probability is defined as a "probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

The general standard of review for claims of ineffective assistance of counsel is whether, *de novo*, considering the totality of the representation, counsel's performance was ineffective. LaHood, 401 S.W.3d at 49. However, a trial court's denial of a defendant's motion for new trial based on ineffective assistance of counsel is reviewed under an abuse of discretion standard. State v. Gill, 967 S.W.2d 540, 541 (Tex. App.-- Austin 1998, pet. ref'd). Therefore, appellate courts do not apply the aforementioned Strickland test *de novo*. Ibid. at 542. Rather, appellate courts review the trial court's application of the Strickland test under the abuse of discretion standard. Ibid. As such, the court determines whether the trial court's decision was clearly wrong as to lie outside the zone of reasonable disagreement. Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).

A person is legally incompetent to stand trial if the person does not have the capacity to (1) understand the nature and object of the proceedings against him, (2) consult with counsel, and (3) assist in preparing his defense. McDaniel v. State, 98 S.W.3d 704, 709 (Tex. Crim. App. 2003); see also TEX. CODE CRIM. PROC.art. 46.02 § 1A(a). Information necessary to sufficiently raise the issue of a defendant's incompetency must be specific and illustrative of counsel's present inability to communicate with the defendant. Moore v. State, 999 S.W.2d 385, 394 (Tex. Crim. App. 1999), *cert. denied*, 530 U.S. 1216, 147 L. Ed. 2d 252, 120 St. Ct. 2220 (2000). It is not enough for counsel to allege unspecified difficulties in communicating with the defendant. Ibid. Evidence of mental impairment alone does not require a competency hearing where no evidence indicates that a defendant is incapable of consulting with counsel or understanding the proceedings against him. Ibid. at 395. It is within the purview of the trial judge to distinguish evidence showing impairment only from that indicating incompetency as contemplated by the law. Ibid. at 396. Moreover, distrust of attorneys and a general failure to cooperate are not probative of competence to stand trial. Burks v. State, 792 S.W.2d 835, 840 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd). "If such actions were probative of incompetence, one could effectively avoid criminal justice through immature behavior." Ibid.

As an initial matter, it should be noted that the appellant's appeal counsel considered the appellant to be competent to make a lengthy affidavit, which was introduced and admitted during the hearing on the appellant's motion for new trial. RR volume 9 at Exhibit MNT #1.  Even more significantly, nowhere in the affidavit does the

appellant claim that he was unable to understand the proceedings or assist in his defense; he merely complains that "I was not understanding some of [the] things that were going on in my defense," without any elaboration as to what those things might have been. Ibid.

Trial counsel explained that his concerns over "competency" and "instability" was simply related to the appellant's apparent failure to read counsel's letters; the appellant sent trial counsel approximately 36 pages of letters in a two month period. RR volume 9 at 24. And exasperated trial counsel considered those statements and "insult" to the appellant, that the appellant understood as such, after which the appellant claimed that he was, in fact, competent. Ibid. at 24-26; ibid. at 35. The appellant wrote his trial counsel, helping in the defense, and indicated an understanding of who the state was, who the judge was, that he wanted and examining trial, and that he wanted a change of venue. Ibid. at 25-26. Trial counsel indicated that the appellant grasped some concepts quickly and others not so quickly. Ibid. at 30. Despite the fact that he was asked specifically whether he had a history of mental treatment, the appellant, who had written 36 pages of letters in total, failed to respond. Ibid. at 33-34. Trial counsel considered the issue of competency but when the appellant responded that he was competent, that he wanted to defend his rights, and that he knew what he was doing, and when he failed to inform his attorney that he had ever had any mental treatment, trial counsel decided that there was no issue. Ibid. at 36. Trial counsel made objections during trial at the appellant's specific request, requested an evidentiary hearing at the appellant's specific request, requested a bond hearing at the appellant's specific request. Ibid. at 36. The appellant helped exercise peremptory strikes. Ibid. at 36-37. He understood the charges against

him, the penalty range, disclosed pertinent facts, understood the nature of the proceedings against him, exhibited proper courtroom behavior, and made the decision not to testify during the guilt phase of his trial. Ibid. at 37-38. He understood the role of the judge and jury. Ibid. at 38. He understood the purpose of the proceedings and the people involved. Ibid. at 39. He even attempted to negotiate plea offers with the prosecutor. Ibid. at 48-49. Another attorney who assisted defense counsel and exercising peremptory strikes testified that he had no concerns about the appellant's competency. Ibid. at 55.

The appellant wishes to argue that, based on mental health records and a history of "mild" retardation, RR volume 9 at 11, the trial court abused its discretion in denying the motion for new trial and that the appellant was incompetent to stand trial; the appellant also seems to argue that trial counsel should have investigated the appellant's mental status. However, the trial court had a record that included the testimony listed above, as well as exhibits and testimony elicited by defense counsel. As such, the trial court had evidence that the appellant had the capacity to, and in fact, <u>did</u> (1) understand the nature and object of the proceedings against him, (2) consult with counsel, and (3) assist in preparing his defense. This obviates the need for a blind search for mental status information; however, even the information submitted by the appellant does not necessarily render him incompetent. Under these facts, it cannot be said that the trial court's decision, found at RR volume 8 at 65-67, was clearly wrong as to lie outside the zone of reasonable disagreement. Even under a *de novo* review, the Record supports counsel's actions.

**IX.   ISSUE TWO:**

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO APPELLANT BECAUSE HE FAILED TO PRESENT MITIGATING EVIDENCE AT PUNISHMENT**

**A. SUMMARY OF THE ARGUMENT**

The appellant next argues that counsel was ineffective for failing to investigate and present mitigating evidence, to wit, that the appellant had mental issues.   This argument is given short shrift in the appellant's brief, and is best summed in footnote 2, found on page 25 wherein the appellant argues that, upon hearing his own client refer to MHMR in his testimony, it was incumbent upon trial counsel to move for continuance and develop a record on the issue of mitigating evidence of diminished capacity.  This was also presented to the trial court at the hearing on the motion for new trial. See RR volume 8 at 60.  The motion was denied, and correctly so.

**B. ARGUMENT AND DISCUSSION**

This issue is very similar to the first issue insofar as it rests on the assertion that trial counsel had an obligation to inquire into the mental status of the appellant.  This issue is discussed above, in regard to issue one.  However, the appellant further argues that when the appellant testified that he had treatment or lived in a "MHMR facility of Dallas housing." RR volume 7 at 54.  As discussed above, the appellant never disclosed, despite a direct question, to his trial counsel that he had received mental treatment.  Trial counsel was not asked, at the hearing on the motion for new trial, why he did not request a continuance at that point during the punishment phase.

However, the issue of whether the record should have been obtained by counsel or presented at trial was expressly considered by the trial court at the hearing on the motion for new trial:

> As to not asking for these records. Even if he had had these records, while it could be argued they may have helped and provided sympathy for Mr. Lampkin, looking at the back of some of these records also shows -- it could be easily argued, with all the requests and complaints that Mr. Lampkin had while in prison, that he was a malcontent or malingerer or other things that could actually have hurt Mr. Lampkin, had he gone -- had these records been introduced in front of a jury.

RR volume 8 at 67. In other words, the trial court was keenly aware that the records contained both good and bad information and determined that the appellant had not shown prejudice by failure to obtain the records, which is also the appellant's difficulty here.

When reviewing a claim of ineffective assistance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. Counsel's action or inaction will be found to be reasonable if the record is silent as to the facts, circumstances, or rationale behind a particular course of action. Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Here, the record is silent. Further, the appellant has not and cannot show that a continuance would

- 16 -

have been granted, that the information was more mitigating than not, or that the information would have yielded a different sentence; in other words, there is no showing of prejudice to support a conclusion of ineffective assistance of counsel. Further, it cannot be said that the trial court abused its discretion in denying this ground for relief.

## X.    ISSUES THREE AND FOUR:

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TOAPPELLANT BECAUSE, KNOWING THAT HIS CLIENT WAS MENTALLY UNSTABLE AND HAVING STATED THAT IN LETTERS TO HIS CLIENT, AT THE LAST MINUTE DURING TRIAL HE ORDERED THAT APPELLANT TAKE THE WITNESS STAND AT THE PUNISHMENT PHASE**

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO APPELLANT, PLACING APPELLANT ON THE WITNESS STAND AT PUNISHMENT WITHOUT ADVISING HIM OF HIS FIFTH AMENDMENT RIGHTS AND OF HOW HE WOULD BE CROSS-EXAMINED ABOUT ALL OF HIS PAST CONVICTIONS AND ABOUT THIS CASE, EXPOSING HIM TO UNFAVORABLE SCRUTINY BY THE JURY, AND ENABLING THE STATE TO ARGUE THAT HE "LIED", WITHOUT OBJECTION**

### C. SUMMARY OF THE ARGUMENT

Appellant next argues that trial counsel ordered him to testify during the punishment phase despite a history of mental instability. This is stated as a claim of ineffective assistance of counsel. The appellant further contends that the letter does not warn the appellant about the dangers of waiving his Fifth Amendment right. This claim was also considered by the trial court at the hearing on the appellant's motion for new trial. RR volume 8 at 67 (decision). He also argues that counsel failed to advise the appellant of pitfalls of cross-examination, including testimony about past convictions and enabling the prosecution to argue that he lied without objection.

Counsel did not "order" defendant to testify, and he personally advised Defendant of his rights, as reflected in the record.

## D. ARGUMENT AND DISCUSSION

As noted by the trial court in its decision, there was testimony to support a conclusion that the appellant wanted to testify, regardless of any letter he was handed by his trial counsel. RR volume 8 at 67 (decision); RR volume 8 at 15 to 19 (defense counsel's explanation of letter and strategy). As stated by defense counsel, numerous convictions were already in evidence and he hoped that his client's testimony would help "soften the blow" with the jury. The appellant was aware of his right to remain silent, because he exercised it during the guilt phase of the trial by not testifying. Ibid. at 37-38. Further, there was testimony that he wanted to testify during sentencing. Ibid. at 30. The appellant, himself, indicated his knowledge of the Fifth Amendment right to not incriminate himself, RR volume 7 at 40, followed by an explanation from the Court. He was present during *voir dire* when the attorneys and jurors discussed his Fifth Amendment Right, as where this was stated:

```
                    A defendant in Texas and the United States
does not have a burden to prove themselves innocent.  It is
the State's burden to prove them guilty.  Because the
defendant doesn't have a burden, they don't have to call any
witnesses.  They don't have to do anything.  But even if
they choose to call witnesses, a defendant has a right under
the United States and Texas Constitutions not to testify or
offer any evidence at all against themselves.
```

RR volume 4 at 15. Contrary to Appellant's suggestion, the record does reveal that trial counsel advised him about his right to testify or not testify. RR volume 5 at 172-173. There is no record of the specific conversation, but that was, in fact, the subject. This was immediately prior to the defense resting. Thus, Appellant's real argument is that trial counsel failed to warn him of pitfalls of testifying during punishment; yet the pitfalls identified by Appellant are essentially the same pitfalls, with regard to cross examination, as during the guilt phase of trial. The appellant argues that an exhibit indicating a prior conviction, Exhibit #27, concerning a misdemeanor conviction (Appellant had numerous felony and misdemeanor convictions)was not a certified judgment of conviction, and ascribed ineffectiveness for failing to object to it, yet can ascribe no prejudice to that event.

The trial court did not abuse its discretion in finding that trial counsel was not ineffective and that his reasons for wanting the appellant to testify constituted sound trial strategy. RR volume 8 at 66-67 (decision). Appellant shows no prejudice for the admission without objection of an uncertified conviction record of a misdemeanor, especially in context of Appellant's numerous other felony and misdemeanor convictions. The fact that the appellant continued to claim he has only had one beer and was not intoxicated (after having been found guilty, despite counsel's written guidance on the issue), and had to answer questions about his prior convictions, is of no moment in light of counsel's prior discussion on Appellant's right to testify or not testify, trial counsel's guidance in punishment testimony, and Appellant's desire to testify. Put simply, the fact that this testimony did not go well for Appellant is Appellant's fault, not his lawyer's.

**XI. ISSUE FIVE:**

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO APPELLANT BECAUSE, KNOWING THAT HIS CLIENT WAS MENTALLY UNSTABLE AND HAVING QUESTIONED APPELLANT'S COMPETENCE, AND HAVING STATED THAT IN LETTERS TO HIS CLIENT, HE FAILED TO PURSUE AN EXAMINATION AND HEARING ON THE QUESTION OF COMPETENCE**

**E. SUMMARY OF THE ARGUMENT**

This issue is dealt with above, in relation to Issue One. Appellant argues that trial counsel had reason to question Appellant's competency and therefore should have requested a competency evaluation.

**B. ARGUMENT AND DISCUSSION**

As stated above, trial counsel explained that his concerns over "competency" and "instability" was simply related to the appellant's apparent failure to read counsel's letters; the appellant sent trial counsel approximately 36 pages of letters in a two month period. RR volume 9 at 24. An exasperated trial counsel considered those statements and "insult" to the appellant, that the appellant understood as such, after which the appellant claimed that he was, in fact, competent. Ibid. at 24-26; ibid. at 35. The appellant wrote his trial counsel, helping in the defense, and indicated an understanding of who the state was, who the judge was, that he wanted and examining trial, and that he wanted a change of venue. Ibid. at 25-26. Trial counsel indicated that the appellant grasped some concepts quickly and others not so quickly. Ibid. at 30. Despite the fact that he was asked specifically whether he had a history of mental treatment, the appellant, who had written 36 pages of letters in total, failed to respond. Ibid. at 33-34. Trial counsel

considered the issue of competency but when the appellant responded that he was competent, that he wanted to defend his rights, and that he knew what he was doing, and when he failed to inform his attorney that he had ever had any mental treatment, trial counsel decided that there was no issue. Ibid. at 36. Trial counsel made objections during trial at the appellant's specific request, requested an evidentiary hearing at the appellant's specific request, requested a bond hearing at the appellant's specific request. Ibid. at 36. The appellant helped exercise peremptory strikes. Ibid. at 36-37. He understood the charges against him, the penalty range, disclosed pertinent facts, understood the nature of the proceedings against him, exhibited proper courtroom behavior, and made the decision not to testify during the guilt phase of his trial. Ibid. at 37-38. He understood the role of the judge and jury. Ibid. at 38. He understood the purpose of the proceedings and the people involved. Ibid. at 39. He even attempted to negotiate plea offers with the prosecutor. Ibid. at 48-49. Another attorney who assisted defense counsel and exercising peremptory strikes testified that he had no concerns about the appellant's competency. Ibid. at 55.

The trial court had a record that included the testimony listed above, as well as exhibits and testimony elicited by defense counsel. As such, the trial court had evidence that the appellant had the capacity to, and in fact, <u>did</u> (1) understand the nature and object of the proceedings against him, (2) consult with counsel, and (3) assist in preparing his defense. Counsel did not fail to do anything, nor was there any prejudice from any failure because the trial court reviewed the evidence and found Appellant competent. The trial court determined that Appellant was, in fact, competent and that counsel was not

ineffective for failing to obtain the records. Even under a *de novo* review, the Record supports counsel's actions.

**XII.    ISSUE SIX:**

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO APPELLANT BECAUSE HE FAILED TO OBJECT TO HARMFUL, PREJUDICIAL, EVIDENCE**

### C. SUMMARY OF THE ARGUMENT

Appelant claims that State's Exhibits 6 and 7 (photographs) were admitted without objection, and without proper predicate.  Appellant claims that the photographs were blurry and therefore did not corroborate testimony of the officer that the appellant's eyes appeared "glassy," that one cannot discern the irises and pupils, and that the eyeballs themselves lack definition.  Appellant contends that exhibit #12, a video, contained "little or no evidence relative to any contested issue it trial" from the 17th minute forward, yet its admissibility was never challenged.  Appellant argues that the sole purpose of introducing the video was to show hostility by the appellant.  Appellant concludes that the hazy photographs and video caused the appellant to look like "some sort of hazy, blurry, form or as a 'zombie', or as someone making threats."

Rather, this appears to be attempt by defense counsel to undermine the weight of the evidence.

### B. ARGUMENT AND DISCUSSION

The constitutional right to counsel does not mean errorless counsel or counsel whose competency is judged by hindsight. Ex Parte Cruz, 739 S.W.2d 53, 57-58 (Tex. Crim. App. 1987). Rather, the right to effective assistance of counsel means counsel

reasonably likely to render effective assistance of counsel. Ibid. An isolated failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance of counsel. Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). Neither is counsel rendered ineffective merely because counsel may have made a mistake during trial or because other counsel might have tried the case differently. Ibid.

Without more evidence, the udnersigned and this Court can only guess at trial counsel's reasons, if any, for not objecting to the evidence, but it does appear that counsel later argued that the photographs and video were not very good, and hence that they were not evidence entitled to much weight, if any. The Court, and the undersigned, must assume that there was some strategy at work, and in any case there has been no showing of prejudice. Defense counsel made the cited comments in closing (discussed below), as a means of undermining the State's case. See Issue Eight, below. That is the only record before this Court.

XIII.     ISSUE SEVEN:

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO APPELLANT BECAUSE HE FAILED TO OBJECT AND CARRY FORWARD THAT OBJECTION TO A MOTION FOR MISTRIAL WHEN STATE'S COUNSEL, IN ARGUMENT AT THE GUILT/INNOCENCE PHASE, MADE REPEATED COMMENTS ON THE FAILURE OF APPELLANT TO TESTIFY, IN VIOLATION OF THE FIFTH AMENDMENT**

C. SUMMARY OF THE ARGUMENT

Appellant claims the trial counsel was ineffective for failing to request a mistrial during closing argument of the guilt phase of trial when the following was stated:

S: Folks, we've all seen intoxicated people. We all know what one looks like. And it looked like Mr. Lampkin on July 12, 2013. We talked about having no excuse, right? We also talked about –

D: Judge, Defense has no burden. I don't appreciate the State implying that we need to come up with an excuse.

Appellant's Brief at 36, quoting RR volume 6 at 33. The objection was overruled. Ibid.

Appellant also complains about the following:

„And then you have driving while intoxicated, right? And what is that crime, other than the most selfish crime you can think of? You're going to get behind the wheel of a car when you know you've had too much to drink, you BAC is a one-one, you can't speak straight, your eyes are glassy and bloodshot, you smell like alcohol. And you get on the roads with members of this community, and you're going to put all those people in danger. For what reason? You have no excuse for being this selfish. You have no excuse for doing what you did that night.

"Right, Mr. Lampkin?„

Ibid. Appellant complains that this was a comment on his failure to testify, without objection.

These were not comments on a failure to testify; rather, they were simply rhetorical devices to suggest that there was no excuse for drunk driving.

**B. ARGUMENT AND DISCUSSION**

To determine if a prosecutor's comment constituted an impermissible reference to an accused's failure to testify and violated article 38.08 of the Texas Code of Criminal Procedure, courts decide whether the language used was manifestly intended or was of such a character that the jury naturally and necessarily would have considered it to be a comment on the defendant's failure to testify. See Bustamante v. State, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001); Fuentes v. State, 991 S.W.2d 267, 275 (Tex. Crim. App.),

*cert. denied*, 528 U.S. 1026, 120 S. Ct. 541, 145 L. Ed. 2d 420 (1999). The offending language must be viewed from the jury's standpoint, and the implication that the comment referred to the accused's failure to testify must be clear. Bustamante, 48 S.W.3d at 765; Swallow v. State, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992). A mere indirect or implied allusion to the defendant's failure to testify does not violate the accused's right to remain silent. Wead v. State, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004); Patrick v. State, 906 S.W.2d 481, 490-91 (Tex. Crim. App.), *cert. denied*, 517 U.S. 1106, 116 S. Ct. 1323, 134 L. Ed. 2d 475 (1996). A remark that calls attention to the absence of evidence only the defendant can supply will result in reversal, but "if the language can reasonably be construed to refer to appellant's failure to produce evidence other than his own testimony, the comment is not improper." Patrick, 906 S.W.2d at 491.

The first cited language from closing argument merely states "we talked about having no excuse, right?" The string objection from defense counsel which was overruled; defense counsel had no obligation to move for mistrial following the denial of his objection. To preserve error with regard to an improper jury argument, a defendant must pursue an adverse ruling. TEX. R. APP. P. 52(a). That is, the defendant must: (1) make a timely and specific objection; (2) if the objection is sustained, request a curative instruction; and (3) if the instruction is given, move for a mistrial. Cook v. State, 858 S.W.2d 467, 473 (Tex.Crim.App.1993). When the court overrules one of the defendant's objections, the defendant preserved error. See Cook, 858 S.W.2d at 473 (after court sustained defendant's objection, defendant did not ask for limiting instruction or move for

mistrial). There was no reason to make a request for mistrial following the adverse ruling.

With regard to both the first and second quote, both of which concern the fact that there is no excuse for drunk driving, neither constituted a comment on the appellant's failure to testify. This ground for relief is puzzling, as "you have no excuse" and "there is no excuse" is a common rhetorical argument, and, at worst, is mere indirect or implied allusion to the defendant's failure to testify. The fact that there is no excuse for drinking and driving, as acknowledged by Appellant, was a theme of the trial. "You have no excuse" is the same as "there is no excuse," and neither invites the conclusion that the appellant should have taken the stand to provide an excuse. Trial counsel did object to the first instance of this language, but learning the Court's ruling and, perhaps, having more time to reflect on why his objection was overruled, trial counsel did not object again. It could also be that trial counsel decided not to risk drawing greater attention to the line of argument with another objection. This was not discussed at the hearing on the motion for new trial, so the record is not sufficient for a full analysis. However, Appellant cannot show that trial counsel's failure to object the second time was the result of anything other than strategy, nor can he point to any prejudice resulting therefrom.

**XIV. ISSUE EIGHT:**

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE TO APPELLANT AT THE PUNISHMENT PHASE WHEN HE MADE ARGUMENT THAT WAS PREJUDICIAL TO APPELLANT**

**C. SUMMARY OF THE ARGUMENT**

Appellant claims the trial counsel was ineffective for arguing that the State's pictures, which Appellant's counsel now characterizes as "Appellant's pictures," as grainy and scary.

**B. ARGUMENT AND DISCUSSION**

Trial counsel was clearly drawing attention to the poor quality of the State's pictures, as is his job, in attempting to undermine the weight of that evidence. The end of the paragraph quoted by Appellant belies Appellant's assertion:

```
trick-or-treaters because it looks like a zombie picture.  I
don't think this is indicative of what a glassy eye would
look like.  I would prefer it to be in color and being a
higher quality photograph.
```

RR volume 6 at 25. This is not ineffective assistance of counsel; it is effective assistance of counsel.

**XV. ISSUE NINE:**

**TRIAL COUNSEL RENDERED INEFFFECTIVE ASSISTANCE BECAUSE HE FAILED TO OBJECT TO THE ADMISSION OF EVIDENCE DERIVED FROM A BLOOD SAMPLE DRAWN UNDER CIRCUMSTANCES THAT VIOLATED THE STANDARDS OF SCHMERBER V. CALIFORNIA AND ROCHIN V. CALIFORNIA**

### C. SUMMARY OF THE ARGUMENT

Appellant claims that trial counsel was ineffective for failing to object to the introduction at admission of blood alcohol analysis because of the manner in which the blood sample was obtained. Specifically, the appellant claims that his blood was taken by force in violation of the Schmerber and Rochin case holdings, among others.

Counsel was not ineffective because there was no constitutional issue regarding the blood draw.

### D. ARGUMENT AND DISCUSSION

A blood draw is a search and seizure under the Fourth Amendment. Schmerber v. California, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966), State v. Johnston, 336 S.W.3d 649, 658 (Tex.Crim.App.), *cert denied*, Johnston v. Texas, 132 S. Ct. 212 (2011). Schmerber established a two-part analysis for determining the legality of a compulsory blood draw and it requires a court to examine:

> 1. whether the police were justified in requiring the defendant to submit to a blood test; and
> 2. whether the means and procedures employed in taking the defendant's blood respected relevant Fourth Amendment standards of reasonableness.

Schmerber, 384 U.S. at 768, 86 S.Ct. at 1834; see Johnston, 336 S.W.3d at 658. The second part of the analysis contains two discrete questions. First, when resolving the reasonableness of the "means" employed, it must be determined whether the test chosen was reasonable. Schmerber, 384 U.S. at 771, 86 S.Ct. at 1836; Johnston, 336 S.W.3d at 658. Second, when resolving the reasonableness of the procedures employed, it must be determined whether the test was performed in a reasonable manner. Schmerber, 384

U.S. at 771-72, 86 S.Ct. at 1836; Johnston, 336 S.W.3d at 658. Appellant challenges the second prong.

In Rochin v. California, 342 U.S. 165, 166, 72 S. Ct. 205, 96 L. Ed. 183, 187 (1952), police directed a doctor to administer an emetic solution to the defendant to induce vomiting after he swallowed two capsules that had been on a nightstand in his bedroom. The Supreme Court distinguished Rochin because there is "nothing 'brutal' or 'offensive' in the taking of a sample of blood when done . . . under the protective eye of a physician." Breithaupt v. Abram, 352 U.S. 432, 435, 77 S. Ct. 408, 1 L. Ed. 2d 448, 451 (1957). In Schmerber, the Supreme Court also held that the taking of the blood sample did not violate the defendant's privilege against self-incrimination or his right to counsel (because a blood sample is nontestimonial evidence), or his right to be free from unreasonable searches (because the sample was taken incident to a lawful arrest, was justified by the exigencies of preserving the evidence, and was taken by a doctor in a hospital environment according to accepted medical practices). Schmerber, 384 U.S. at 765, 772.

In Johnson, the Court of Criminal Appeals observed that "it is not out of the norm, even in a medical setting, to restrain an uncooperative DWI suspect in order to obtain a blood sample." State v. Johnston, 336 S.W.3d 649, 663 (Tex. Crim. App.), *cert. denied,* Johnston v. Texas, 132 S. Ct. 212 (2011).

The testimony established that the appellant was yelling and cussing, stating that the officers would not get his blood. RR volume 5 104-106. The officers obtained a warrant, Appellant still refused to cooperate, and he was restrained. Ibid. There was no

evidence that he was actually injured, and the Appellant stopped resisting while being held on the bed by his shirt. Ibid. When the nurse had sufficient blood, the procedure was over. Ibid. at 106. The nurse, Don Leach, testified that the officers held Appellant's arms down so he wouldn't move. RR volume 5 at 145. Appellant claimed his wrists hurt, he was checked by a doctor, and he went to jail. Ibid. As <u>Johnson</u> holds, it is normal procedure to restrain an uncooperative DWI suspect in order to obtain a blood sample. Appellant's argument that "no doubt Dean used force, throwing Appellant face down with hands cuffed behind him," Appellant's Brief at 62. That is just surmise and not supported by the record—there is no testimony about throwing anyone; the testimony is that the Trooper pushed appellant to the bed to control him. There was nothing brutal about the procedure, and nothing to object to by trial counsel. Trial counsel was, therefore, not ineffective in failing to make a useless objection to evidence, thereby drawing more attention to its damning nature.

## XVI. ISSUES TEN AND ELEVEN:

**THE EVIDENCE WAS LEGALLY INSUFFICIENT BECAUSE THERE WAS NO EVIDENCE BY RETROGRADE EXTRAPOLATION THAT THE RESULTS OF THE BAC TEST SHOWED INTOXICATION AT THE TIME OFTHE OFFENSE, NOR WERE THE OBSERVATIONS BY AGENTS OF THE STATE SUFFICIENT TO INDICATE LOSS OF NORMAL USE OF MENTAL AND PHYSICAL FACULTIES**

**THE EVIDENCE OF BAC CONCENTRATION SHOULD HAVE BEEN EXCLUDED AND THE FAILURE TO SO EXCLUDE WAS HARMFUL TO APPELLANT UNDER THE BAGHERI DECISION, SUCH THAT IT CANNOT BE SAID THAT THE VERDICT OF GUILTY WAS NOT AFFECTED BY THE JURY'S CONSIDERATION OF THE BAC EVIDENCE. IN ARGUMENT, THE STATE URGED THE JURY TO FIND GUILT UNDER EITHER THEORY**

### E. SUMMARY OF THE ARGUMENT

Appellant's argument seems to assume that the sole expert at trial, who testified about the intoxilyzer results, should have been excluded because it was, in effect, retrograde analysis showing the blood alcohol level at the time of arrest, or that the evidence of intoxication was insufficient because there was no retrograde analysis.

Both arguments are incorrect because the cited evidence was not represented as retrograde extrapolation.

Neither party presented retrograde analysis or argument.

## F. ARGUMENT AND DISCUSSION

Nothing in Texas' statutory framework specifically mandates extrapolation evidence. <u>Mireles v. Texas Dep't of Pub. Safety</u>, 9 S.W.3d 128, 130 (Tex. 1999). There was no testimony concerning retrograde analysis; the expert mentioned by Appellant, Ms. Ream, did <u>not</u> testify about retrograde analysis—her testimony was, basically, this is what the blood alcohol concentration was when the blood was taken approximately two hours and 19 minutes after Appellant's arrest. RR volume 5 at 161. Appellant claims that this means "there was no probative evidence to prove Appellant intoxicated at time of the offense under the BAC 'per se' definition," and leaps to the conclusion that the "State's evidence was legally insufficient." Appellant's Brief at 48. In fact, defense counsel asked Ms. Ream,

```
     Q.   You have no way of knowing if my client was
intoxicated at the time he was driving the vehicle, do you?
You're not an extrapolation expert; you couldn't help us
figure that out?
     A.   I actually do know extrapolation, but
extrapolation only works in the downward spiral, not on
absorption side.  So, yes, I have been trained in that.
```

Ibid. He did not press for an answer to the first question. It was never asked by any other participant in the trial. In sum, no extrapolation evidence was presented, and its reliability was not a question for the Court or jury. It is likely that the prosecutor did not

ask for extrapolation specifically because 2 hours and 19 minutes would be past the limits of reliability for extrapolation.

In any case, extrapolation evidence was not required. See Forte v. State, 707 S.W.2d 89, 94-95 (Tex. Crim. App. 1986) (holding that defendant committed DWI offense without consideration of extrapolation evidence); Price v. State, 59 S.W.3d 297, 300 (Tex. App.--Fort Worth 2001, pet. ref'd) (holding that extrapolation is not required if other evidence proves intoxication beyond a reasonable doubt); O'Neal v. State, 999 S.W.2d 826, 832 (Tex. App.--Tyler 1999, no pet.) (determining that extrapolation not required to find defendant guilty of intoxication per se). Here, on July 12, 2013, Deputy Cassin, saw Appellant driving a red truck, in reverse, the wrong way down an off-ramp of Interstate 20. RR volume 5 at 38-39. Appellant pulled right in front of the officer, ignopring a yield sign, as he approached. Ibid. at 41. The officer smelled alcohol on Appellant, Appellant had bloddshot and watery eyes, and his speech was slurred. Ibid.; Ibid. at 80-81. Appellant gave the officer information that did not match the officer's computer nor dispatch. Ibid. at 48-49. Deputy Cassin called for assistance from a Trooper, Trooper Dean. Ibid. at 49-50. The jury watched video captured by Deputy Cassin's car. Ibid at 52-57. They viewed photos of the Appellant. Ibid at 78-79. After having received a *Miranda* warning,

Trooper Dean arrived and also noted that the appellant had red and glassy eyes, and smelled of alcohol. Ibid. at 92. He asked the appellant how much he had been drinking and appellant responded one 16 ounce beer. Ibid. The Trooper testified that he then performed a horizontal gaze nystagmus test, and the ways that the plaintiff exhibited

four out of six clues of intoxication.  Ibid. at 94-95.  Since the appellant was already under arrest for another offense and in handcuffs, he could not perform other tests.  Ibid. however, the Trooper continued to speak with him and the appellant changes answer to one to three 16 ounce beers.  Ibid. at 96.  The appellant described his level of intoxication, on a scale of 0 to 10 (completely sober to the most intoxicated he had ever heard of anyone being) and the appellant answered that he was a five.  Ibid. the Trooper asked for a specimen of the appellant's blood — Appellant refused — and completed a search warrant; the warrant was issued by Judge.  Ibid. at 97.  At the hospital, the appellant was cussing and yelling and told the Trooper "you're not sticking a goddamn needle in my motherfucking arm," claimed that the warrant was not valid, and refused to cooperate.  Ibid. at 104-105.  He had to be restrained in order for us blood to be taken.  Ibid. at 105-106.  The jury was able to watch video from the Trooper's car as well.  Ibid. at 107-109.  The appellant admitted that he might be intoxicated.  Ibid. at 114.  The Trooper also indicated that the appellant had slurred speech.  Ibid. at 139.

In direct response to Appellant's Issue Ten, there was no evidence by retrograde extrapolation, probably, because it could not reliably be done after two hours.  The undersigned does not know the answer to that question definitively, but there was no retrograde extrapolation evidence presented by either side and the jury was left to decide how much weight to give to the alcohol concentration in the appellant's blood when it was taken.  However, there was other evidence from which the jury could determine that the appellant was intoxicated.

This Court reviews legal and factual sufficiency challenges using the same standard of review. Ervin v. State, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); In re Winship, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071, 25 L.Ed.2d 368 (1970); Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Viewed in the light most favorable to the verdict, the evidence is insufficient under this standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt. See Jackson, 443 U.S. at 314, 318 n. 11, 320, 99 S. Ct. at 2786, 2789 & n. 11; Laster, 275 S.W.3d at 518; Williams, 235 S.W.3d at 750. Additionally, the evidence is insufficient as a matter of law if the acts alleged do not constitute the criminal offense charged. Williams, 235 S.W.3d at 750.

An appellate court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing Hooper v. State, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007)). In viewing the record, direct and circumstantial evidence are treated equally. Ibid. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an

actor, and circumstantial evidence alone can be sufficient to establish guilt. Ibid. An appellate court presumes that the factfinder resolved any conflicting inferences in favor of the verdict and defers to that resolution. See Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778. An appellate court also defers to the factfinder's evaluation of the credibility and weight of the evidence. See Williams, 235 S.W.3d at 750.

A person is guilty of driving while intoxicated "if the person is intoxicated while operating a motor vehicle in a public place." TEX. PEN. CODE § 49.04(a). As a general rule, the testimony of an officer that a person is intoxicated provides sufficient evidence to establish the element of intoxication for the offense of DWI. See Annis v. State, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979) (reasoning that officer's testimony that person was intoxicated provided sufficient evidence to establish element of intoxication). Combined with odd driving, including backing the wrong way on an exit ramp, cutting off a police car despite a yield sign, the time of night, glassy eyes, bloodshot eyes, and the smell of alcohol, Trooper's Dean's conclusion that Appellant was intoxicated gave the jury sufficient evidence, even without the blood alcohol level of .111, to support a conclusion that the appellant was driving while intoxicated. However, the State did not present extrapolation evidence, and neither did the defense; nor did the defense develop any theory or argument that the blood test result was too old or deserved less weight or credibility. Accordingly, Appellee respectfully contends that the blood evidence should have been considered by the jury.

The cases cited by Appellant— <u>Bagheri v. State</u>, 119 S.W.3d 755, 762 (Tex. Crim. App. 2003), <u>Mata v. State</u>, 46 S.W.3d 902 (Tex. Crim. App. 2001), and <u>Burns v. State</u>, 298 S.W.3d 697 (Tex. App. – San Antonio 2009, no pet.)—simply have no application here. Each of those case concerned the erroneous <u>admission</u> of extrapolation testimony. No extrapolation testimony was elicited in Appellant's trial. No expert claimed to know Appellant's blood alcohol level at the time he was driving. Those cases are simply inapplicable.

The blood alcohol evidence was not improperly admitted, and there was no retrograde extrapolation; however, even absent the blood alcohol evidence, considering all the other record evidence in the light most favorable to the verdict, it cannot be said that no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt.

## XVII. ISSUES TWELVE AND THIRTEEN:

### THE TRIAL COURT REVERSIBLY ERRED IN FAILING TO SUPPRESS EVIDENCE TAKEN IN VIOLATION OF MIRANDA

### THE TRIAL COURT REVERSIBLY ERRED IN FAILING TO INCLUDE ANART. 38.23 INSTRUCTION

### G. SUMMARY OF THE ARGUMENT

Appellant claims that trial court erred in failing to suppress Appellant's verbal admissions and failing to instruct the jury under Article 38.23. This argument is based on trial counsel's objection because the appellant was not visible (but was audible) in the video and that his client was "confused" and did not properly waive his rights. The court

correctly concluded that the "confused" argument was simply that, argument. RR volume 5 at 62. At the time Trooper Dean arrived, Appellant was already under arrest for possession of a stolen vehicle and had been mirandized. The gravamen of the argument is that Trooper Dean should have mirandized the appellant again. The court found that the Miranda warning given by officer Cassin was sufficient and that the questions by Trooper Dean during the field sobriety test were only investigative. Ibid. the appellant argues that, as a result of the error, the horizontal gaze nystagmus test results, the appellant's estimate of his intoxication, the number of beers he drank, and the Trooper's observations and testimony based on the responses of the appellant to his questions were presented to the jury when they should not have been.

Trial counsel requested an Article 38.23 instruction to the jury, but the trial court denied that request. RR volume 6 at 4-7.

An Article 38.23 instruction was not warranted because there were no factual issues. Further, trial counsel did not propose a specific instruction in order to preserve error.

## B. ARGUMENT AND DISCUSSION

Trooper Dean considered Appellant under arrest when he arrived; Appellant was in handcuffs. RR volume 5 at 92. Appellee must concede that this was a custodial interrogation despite the fact that, under normal circumstances, the Trooper's questions would be considered investigatory only.

In a situation in which a suspect is warned about his Miranda rights, a break in the questioning occurs, and questioning resumes without new Miranda warnings, the Miranda warnings administered in the first interview remain effective as to admissions

made during the second interview if, in the totality of the circumstances, the second interview is essentially a continuation of the first. Bible v. State, 162 S.W.3d 234, 241-42 (Tex.Crim.App. 2005); Jones v. State, 119 S.W.3d 766, 773 n.13, 795 (Keller, P.J. concurring)(Tex.Crim.App. 2003), *cert. denied*, 542 U.S. 905, 124 S. Ct. 2836, 159 L. Ed. 2d 270 (2004); Ex Parte Bagley, 509 S.W.2d 332, 337-38 (Tex.Crim.App. 1974); Franks v. State, 712 S.W.2d 858, 860-61 (Tex.App.--Houston [1st Dist.] 1986, *pet. ref'd*). In determining whether Miranda warnings previously administered remain effective in a subsequent interview, courts consider: (1) the passage of time; (2) whether the interviews are conducted by different people; (3) whether the interviews relate to different offenses; and (4) whether the suspect is asked during the second interview if he received the warnings earlier, if he remembers the warnings, and if he wishes to invoke his rights. Bible, 162 S.W.3d at 242; Jones, 119 S.W.3d at 773 n.13.

Appellant creates a confusing picture. The testimony of Deputy Cassin, as reflected on the Trooper's video, was the Trooper Dean was on scene and instructed Cassin to Mirandize Appellant. Both officers were present at that time. RR volume 5 at 57. This matched the officers' testimony at the Suppression Hearing. RR volume 3 at 10. Cassin testified that the Appellant "shook" his head "up and down in the affirmative and said yes" when asked if he understood. RR volume 5 at 57. This is also corroborated by the video, State's Exhibit #4, at 23:05:55 to 23:05:16. The reading of the rights is videotaped; Appellant is slightly off screen and indicated that he understood his rights. RR volume 5 at 56-58. All parties and voices were identified. This meets the requirements of Article 38.22 §§ 2 and 3, and Miranda. The undersigned finds no

authority to the effect that when there is more than one officer present, all officers must separately Mirandize a custodial suspect, or that a custodial suspect must be Mirandized separately for each crime.

A defendant's right to the submission of a jury instruction under article 38.23 is limited to disputed issues of fact material to a claim of a constitutional or statutory violation that would render evidence inadmissible. Madden v. State, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007). In order to be entitled to such jury instruction, the defendant must meet three requirements:

(1) the evidence heard by the jury must raise an issue of fact;

(2) the evidence on that fact must be affirmatively contested; and

(3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

Ibid. at 510. The contested factual issue must be essential to the resolution of the legality of the challenged conduct; if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. Ibid. at 510-11.

Additionally, in order to be entitled to an article 38.23 instruction a defendant must request an instruction on a specific historical fact. Ibid. at 511. When a defendant does not present a proposed article 38.23 jury instruction asking the jury to decide a specific disputed historical fact, any potential error in the charge should be reviewed only for egregious harm. See Ibid. at 513.

Here, trial counsel requested a 38.23 instruction with regard to the knowing and voluntary nature of Appellant's waiver of his "statutory warnings." RR volume 6 at 4-5. The Court denied the request because the waiver was made on video and the officer testified that Appellant nodded his head "yes," indicating he understood the rights. The Court considered the request to invite nullification under those circumstances because there was no evidence to suggest that the waiver was unknowing or involuntary; in other words, there was no factual dispute for the jury to resolve. Ibid. With no factual controversy, the Court concluded that whether the waiver was valid amounted to a question of law, which would be inappropriate for the jury. Ibid. at 6-7. In the absence of facts to support the defense request, the Court was correct to deny the request.

Further, defense counsel did not present a specific proposed jury instruction to the Court; any potential error was thus waived.

## XVIII. ISSUE FOURTEEN:

### TRIAL COURT ERRED, ALLOWED EXTRANEOUS OFFENSE EVIDENCE

#### C. SUMMARY OF THE ARGUMENT

The parties agreed not to mention to the jury that Appellant had stoeln the truck he was driving. However, this presented some difficulty at trial. In particular, the Court allowed testimony that Appellant failed to notice that the ignition was punched out; the State argued that this was evidence that Appellant was intoxicated, because Appellant claimed to not notice the missing ignition, and the testimony was allowed over a defense objection. RR volume 5 at 109-112. Notably, the "agreement" was a motion and Order in

*limine*, and defense counsel had no objection to the initially edited video which included an exchange mentioning the punched out ignition. Ibid.

### B. ARGUMENT AND DISCUSSION

There was no mention during the trial, in the jury's presence, of the truck being stolen. The Court correctly determined that if the ignition was punched out and Appellant, the driver, failed to notice that, then his inattention to such details could be probative of his intoxication. RR volume 5 at 111-112. This appears solely on video and not in any questioning of a witness. Fortunately, the Court's conclusion is based on common sense and is well grounded. There was no evidence of an extraneous offense, as alleged by Appellant; rather, there was simply evidence that Appellant wasn't paying attention to the condition of the vehicle he was admittedly driving. This point of error is without merit.

### XIX.    CONCLUSION AND PRAYER

Appellant has presented numerous grounds for relief, both for ineffective assistance of counsel and substantive grounds. However, this was a simple case of driving while intoxicated 3rd or more, enhanced. The undersigned finds no error in the record and respectfully requests that upon review of this case the Court of Appeals affirm Appellant's conviction and sentence.

Respectfully submitted,


/s/ L. Charles van Cleef


_____

L. Charles van Cleef
State Bar No. 00786305

P.O. Box 2432
Longview, Texas 75606-2432
(903) 248-8244 Telephone
(903) 248-8249 Facsimile

COUNSEL FOR APPELLEE

## XX.    CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been

forwarded by email/e-filing to:

    Hough-Lewis "Lew" Dunn
    Attorney at Law
    201 E. Methvin, Suite 102
    P.O. Box 2226
    Longview, TX 75606
    dunn@texramp.net

on this Tuesday, December 23, 2014.


                                        /s/ L. Charles van Cleef

                                        _____
                                        L. Charles van Cleef

## XXI.    CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document complies with Rule 9 of the Texas Rules of Appellate Procedure, regarding length of documents, in that exclusive of caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, issues presented, statement of jurisdiction, statement procedural history, signature, proof of service, certification, certificate of compliance, and appendix, it consists of 8.413 words.

/s/ L. Charles van Cleef

_____

L. Charles van Cleef

## XXII.    APPENDIX

Appellee does not require any items in an Appendix beyond those submitted in Appellant's Appendix. TEX. R. APP. P. 38.2(c).